Lipscomb, J.
The plaintiff below, who is tbe appellant in this court, in bis petition among other things states that one Jones *(261) was indebted to bim in a large amount, upwards of ten thousand dollars; that he caused a writ of attachment to be sued out of the court of chancery of the state of Mississippi, which was levied on a large number of negro slaves belonging to Jones, in the possession of the defendant Turner; that the defendant Jones was not able to replevy the slaves, but that an arrangement was made giving the plaintiff a lien on the slaves and the crops to be made, and the slaves were to remain in the possession of Turner and an agent, to be appointed by the plaintiff; that the proceeds of the crops were to be shipped to Lambeth & Thompson, in Uew Orleans, and applied to the payment of the debt. The petitioner was to give his bond payable, to Jones and the defendant Turner conditioned to refund to them &ny amount of excess of the proceeds of the crops that might remain, over and above the amount of the debt, interest and cost", that might be adjudged to him; that petitioner afterwards gave his bond with security to Jones and Turner, in the amount of twelve thousand dollars, to refund in accordance with the contract; that Jones, by power of attorney, appointed Turner his attorney in fact.to attend to the business; that the said Jones afterwards departed this life, and by his last will and testament, constituted -the said Turner with others his executor; that another contract was then made with Turner, in which the first contract is referred to, and Turner admits that the slaves were returned to him under that contract; that he was now the executor, but acknowledges himself personally bound for the possession, conjointly with one Sellers, the agent of the petitioner (and who was the overseer on the plantation) until the debt was paid; that the debt amounted to ten thousand four hundred and ninety dollars and thirty-five cents; that Jones in his lifetime claimed an offset to the debt which is yet in controversy; that the parties being anxious for a compromise of the suit, it is agreed that the property attached in the said suit should remain in possession of Turner and Sellers, and not be removed; and that the crops should be- shipped to the plaintiff, and the proceeds applied to the payment of the debt; and that a decree by consent should be rendered by the chancellor in vacation for the full amount of the said debt, interest and cost of suit; that provided the crops were faithfully shipped, an execution should not issue on the said decree sooner than April, 1848, presuming that two crops would be sufficient to extinguish the debt; that some offsets claimed, when ascertained by suit or by arbitration, as may be agreed by the parties,, shall be credited against so much of the decree as may remain unsatisfied after deducting the proceeds of the crops — it being expressly understood that neither of the said parties by this agreement intend *(262) being stopped from, or to relinquish any claim or claims mutually existing between them. But it is intended only to shut out inquiry or evidence which may interfere with the said suit in chancery, and for obtaining a final decree thereon for the whole amount of the debt, interest and cost. The petitioner then sets out that the said Turner then undertook to perform the trust, and to perform and abide by the decree of the chancellor. The petitioner sets out the decree of the chancellor, which is in conformity to the agreement. He states that by the laws of Mississippi, the decree gave a lien on the property attached, until the debt, cost and interest was paid; that the whole of the said debt remains unpaid; that Turner having the possession under the arrangement and the agreement herein set forth, disregarding his agreement, secretly and fraudulently absconded from Mississippi with the said negroes, in the early part of the year 1844, and came to the county of lied Liver in the republic of Texas, in the same year, bringing the said negroes with him, where he has remained ever since. The petitioner avers that Turner is liable for the debt, interest and cost, both in his individual and fiduciary character; that there is not sufficient property of the defendant in the state of Mississippi to pay the said debt; that the petitioner has demanded the said slaves, to pay the debt, or that Turner should pay the sum; that the said Turner refuses to give them up or to pay the debt. He prays for the writ of sequestration and for judgment. The sequestration was issued. The defendant appeared, and in his answer says that the matters and things in the plaintiff’s petition are not sufficient in law to entitle him to his action, and denies that by law he is required to make further answer. This answer was sustained by the judge, in the court below, and judgment given for the defendant. "Whether we call the answer of the defendant in this law a demurrer, as in common law or chancery courts, or call it a peremptory exception, its legal effect is the same, as the same rule of law is applicable by whatever name it is known. If the petition shows no cause of action, then it was correctly sustained. If on the other hand there is a sufficient cause of action shown, the judgment was erroneous and must be reversed. It cannot avail, whatever informality, irregularity or defect there may be in any part of the petition, if there should be a good cause- of action independent of those objections. If dilatory or special exceptions had been taken, they could if well taken have been sustained without destroying any good cause of action, and the parties could have amended and gone on to trial; or all the exceptionable matter could have been stricken out, without impairing what was good. If there is a good and a bad averment, the striking out the bad *(263) one would not destroy the right of action. The answer of the defendant admits in law all the facts stated in the petition to be true, to the extent of whatever would have required proof before the jury; and taking it all to he true, we must examine the petition and determine whether thei’e is any ground or cause of action contained in it. "W'e have not made a complete statement of all that is in the petition, but a synopsis óf what we considered essential in our investigation. It contains a minute and somewhat tedious history of the several transactions between the parties; setting forth the original indebtedness of Jones, and the manner in which Turner made himself a party, and as the plaintiff conceives, liable for the debt. He seems to have had two objects in view, in the detail of these transactions; the first, to show cause of action on his lien upon the negroes; the second, to fix the liability of Turner for the debt. For the first, he shows the original indebtedness of Jones to an amount of upwards of ten thousand dollars; the commencement of judicial proceedings, founded on that indebtedness against him; the attachment, from the chancellor of the slaves in the possession of Turner; and the contract of Jones and Turner of the one part, and the petitioner of the other.
For the second, he first shows the contract before mentioned, wherein Turner became bound as trustee, to do and perform the trusts therein contained:
Secondly, the death of Jones, constituting Turner by his last will and testament executor, and Turner’s taking on himself the executor-ship:
Thirdly, the contract between Turner and himself as stated above, and the breach of the same by his disregarding its provisions, and running the property off to Texas.
"We are not advised of the particular ground on which the judgment of the court below was founded; but it seems to us that the grounds taken to sustain the judgment in this court would be more appropriate as a special exception to pleas, after full answer before the jury. Hone of them we believe, if sustained, could destroy all cause of action set forth in the petition. We presume that in the opinion of the judge in the court below, the suit was brought on a judgment or decree of the chancery court of the state of Mississippi. By the second section of the act of congress of Texas, approved 19th of February, 1841 (5th Congress, p. 44), it is provided: “That no suit, proceeding, judgment or decree, shall be brought, prosecuted or sustained in any court or judicial magistracy in this republic, on any judgment or decree of any court or tribunal of any foreign nation, state or territory; this republic not being bound by any international law or *(264) courtesy to give credence or validity to the adjudications of foreign tribunals, whose measures of justice and rules of decisions are variant and unknown here. But this provision is in no degree to affect the validity or obligations of contracts, engagements or pecuniary liabilities originating abroad, or the original evidence, testimony or proof, to establish the same; neither shall this provision extend to or embrace any foreign judgment or decree for specific property or recovery, introduced as the basis of a public sale for the transmission of title, or the record ' or memorial of any link or muniment of title to any specific estate, all of which shall depend upon the present laws of the republic. And this provision shall not in any manner relate to or affect the determinations of courts of admiralty and maritime jurisdiction abroad, proceeding m rem, and according to the law of nations.” The main object of this section of the law is so clear and obvious, that it is not susceptible of a doubt. The legal effect of foreign judgments, when sued on, had been much discussed, and these discussions had not been confined to their effect when the suits were brought on the judgment of the court of a sister state, in which cases the courts rest their decisions as to the legal effect of a judgment, on the constitution of the United States; and it is held that the original consideration cannot be inquired into, unless the judgment can be impeached for fraud or a want of jurisdiction. That they are conclusive of the subject-matter on which they have been rendered, and very eminent jurists have held that the judgment of a foreign jurisdiction, in the strictest sense of the term foreign, should command the same respect. In the common law courts it is the established rule, that the action of debt must be brought on a foreign judgment, and ' that is the only action that can be sustained. It is ruled, too, that to debts so brought, the plea of nil debet is no answer, and would be bad on general demurrer. It is not our purpose to review or decide on the correctness of the adjudications on this subject. We have only made reference to this subject for the purpose of illustrating the object intended to be embraced by the section of the act of congress we have cited. It is beyond all doubt that it was the intent of this law to destroy the inviolability that had been claimed for a foreign judgment, and to open to our own courts a free and unlimited inquiry into the original consideration or cause of suit, and apply to them the rules of our own courts; but not with a view to prevent the prosecution of suits founded on a good cause of action. This is manifest from the careful manner in which it is provided, that this provision is in no degree to affect the validity or obligation of contracts, •engagements or pecuniary liabilities originating abroad. It was not *(265) intended to affect the original consideration, for that is emphatically denied. It was only saying to foreigners, yonr own judicial tribunals are not to conclude our own courts; the consideration on which your judgments are founded (unless in the eases excepted) are again to be inquired into, to show that you have a good cause of action beyond your judgment or decree, and our courts are open to the investigation and fully competent to afford you appropriate relief.
How far the act of congress of Texas would be sustainable, in a suit brought on the judgment of a sister state, since our annexation, in the supposed opposition to the provisions of the constitution of the United States, is not before us and it will be sufficient to meet that question when it is presented. This suit wras commenced before that event and we have no hesitation in saying that the act was valid to all intents and purposes when the suit was so instituted. If, therefore, it was brought on the judgment or decree of a foreign tribunal, that it is in contravention of the law of the land and the judgment of the district court is correct. "We will inquire if the action is so brought. The petition as before observed is very prolix and embraces many things that might have been omitted, and if of any use at all, should have been reserved for another stage in the progress of the cause; but, in our opinion, it docs not purport to be brought on the judgment or decree of the chancellor of the state of Mississippi. The plaintiff does not make that the basis of his right to recover, else why should he so minutely and circumstantially state the original indebtedness of Jones; the agreement he made with Jones and Turner; the agreement with Turner before he refers to the decree of the chancellor entered by the consent of Turner? These are only stated as inducements to-fix the liability of Turner, and the suit may have been based upon any one or more of these circumstances without restricting it to the decree. It can, certainly, be no objection to any right of action set forth that he has coupled therewith, as a part of the history of the transaction, that decree; the right is not based upon, but only comes through it as an attendant circumstance. We need not give it the high and undisputed credence claimed for a judgment, but if too much is claimed for it in the petition, as savoring of being the foundation of a right of action (which we do not admit); if it could be stricken out of the petition and still leave enough in it to sustain the suit, the answer or peremptory exception of the defendant ought to have been overruled. Suppose then that the decree was stricken out of the petition, what are the grounds to support the right of action? There would be found the original indebtedness of Jones — the contract between Jones and Turner on the one part, and of the plaintiff on the other, by which *(266) Turner became bound to the faithful discharge of the trust; the second contract which was between Turner and plaintiff, the violation of that contract, and running off the negroes with an intent to defeat and defraud the plaintiff, would all or none of these give a cause of action? We are bound to believe that all of these allegations are true; they all stand as admitted to be true by the defendant. We believe, then, that in any aspect in which this petition is presented, it affords a good cause of action; that it is not founded on the judgment or decree of a foreign tribunal and not repugnant to the law; that the judgment of the court below must be reversed, and the cause remanhed with leave to both parties to amend.