Syllabus.

# The Houston & T. C. R. R. Co. v. Victoria C. Burke.

(Case No. 4351.)

1. CITATION.— Though, under the Revised Statutes (arts. 1215, 1219, 1220), the citation to a defendant should state, amongst other things, the nature of the plaintiff's demand, it was not designed to supply in this respect the place of the petition; a general statement notifying defendant of the character of plaintiff's demand, and avoiding any attempt at detail, is sufficient.

2. SAME — STATUTES CONSTRUED.—In a suit against an incorporated company, citation may be served upon a local agent representing the company in the county in which such suit may be brought (R. S., 1223). A petition alleged that a defendant incorporated company had an office "for the transaction of business as a common carrier in the city of Austin, Travis county, Texas, at which place the agent of said company is Robert S. Collins." The suit was brought in Travis county. *Held*, that service of citation on Robert S. Collins was sufficient to hold the defendant to answer the petition, and that no judicial ascertainment of the agency was required to authorize a judgment by default.

3. SERVICE.— When service of citation is made upon the agent of an incorporated company who resides in the county where the suit is brought, the defendant company, though its principal office may be elsewhere, is not entitled to be served with a certified copy of the petition.

4. FACT CASE.— See opinion for facts stated in motion and affidavits to set aside a judgment by default, which so far excused a failure to answer, that, if accompanied with a showing of a meritorious and valid defense, should have authorized the granting of the motion.

5. PRACTICE.— A defendant against whom a judgment by default has been rendered cannot complain that plaintiff's claim for damages was excessive, if, after overruling his application to set aside the default, the court permitted the defendant to introduce evidence to show the true extent of damage sustained.

6. COMMON CARRIER— RAILROAD COMPANY — BILL OF LADING.— From considerations of public policy, common carriers are made liable under the statute (R. S., art. 278), and under the decisions of the courts of Texas, as at common law, for all losses not occasioned by the act of God or the public enemy; and any exceptions or special contract seeking to vary that liability are invalid. But if the shipper practices a fraud on the carrier by fraudulently concealing, either through his acts or omissions, the value of the article shipped, the carrier is discharged.

7. FACT CASE.—See case for facts, stated in an application to set aside a judgment by default, which were held insufficient to show such a valid, meritorious defense as to authorize the granting of the application.

8. HEARSAY EVIDENCE.—In a suit for damages resulting from the loss by a common carrier of a family portrait, a member of the family was permitted to testify that he knew the value (stating it) of the painting from family tradition and from his deceased father.   Aside from this, artists testified that the painting was worth that amount, though other witnesses swore to a less value. The court in the charge authorized the jury to look to the original cost, etc., in determining value.   *Held,*

(1) That the error in permitting the hearsay evidence required a reversal of the judgment, exception being taken in time.

(2) Whenever improper evidence has been admitted which may have influenced improperly a jury, the error requires a reversal of the judgment.

9. DEPOSITIONS — PRACTICE.—Notice of objections to the manner or form of taking depositions is in time if given before both parties have announced ready for trial.   Until then the trial of the suit has not, in contemplation of the statute, commenced.   R. S., art. 2235.

10. MEASURE OF DAMAGES — EVIDENCE.— It is error to permit a witness to give his opinion as to the measure of damages, that being matter of law.

11. WITNESS — EVIDENCE.— A witness may, while on the witness stand, refresh his recollection as to the value of specific articles by referring to a bill of particulars, known to him to be a copy of a correct memorandum of their value, made by himself.

12. DAMAGES — MEASURE OF DAMAGES.— In a suit to recover damages for the loss or destruction of family portraits, which have no market value, the jury may look to their original cost and to the probable cost of reproducing and replacing the same.

APPEAL from Travis.    Tried below before the Hon. John W. Robertson.

The opinion sufficiently states the case.

*Walton, Green & Hill* and *George Goldthwaite,* for appellant.

*John B. Rector,* for appellee.

I. The citation states the nature of plaintiff's demand.

R. S., art. 1215; Wade on Notice, § 1156; Hughes v. Osborne, 42 Ind., 450.

II. The allegations in plaintiff's petition are sufficient to hold defendant to answer by service on Robert S. Collins. The petition says, "That the defendant, the said Houston & Texas Central Railway Company, is a body corporate, created by the legislature of the state of Texas, entitled an act, etc., and that the principal office of said company is in the city of Houston, Harris county, Texas, and that said company has an office for the transaction of its business as a common carrier in the city of Austin, Travis county, Texas, at which place the agent of said company is Robert S. Collins." R. S., art. 1223; Wade on Notice, §§ 1310, 1311; M. K. & T. R. R. v. Crowe, 9 Kan., 496; State v. Han. & St. Jo. R. R., 51 Mo., 532.

III. The agency of Robert S. Collins was judicially ascertained. There was a judgment by default in the case.

IV. Defendant was not entitled to a copy of plaintiff's petition accompanying citation. R. S., arts. 1216, 1219, 1220, 1223.

V. The defendant was guilty of such negligence in failing to answer plaintiff's petition as justified the court in refusing to set aside the judgment by default. Foster v. Martin, 20 Tex., 119; Watson v. Newsham, 17 Tex., 437; Freeman v. Neyland, 23 Tex., 529; Ables v. Donley, 8 Tex., 336; Power v. Gillespie, 27 Tex., 370; Houston v. Jennings, 12 Tex., 487; Clute v. Ewing, 21 Tex., 677; Sayles' Treatise, § 841.

VI. The defendant in its application to set aside the judgment by default failed to show that it had a good defense to plaintiff's cause of action. Foster v. Martin, 20 Tex., 119; Cook v. Phillips, 18 Tex., 31; Wright v. Thomas, 6 Tex., 421; Cochran v. Middleton, 13 Tex., 275; Aldridge v. Mardoff, 32 Tex., 297; Scrivner v. Malone, 30 Tex., 773. As to exemptions in bill of lading from liability, how far binding, see R. S., art. 278; Lawson on Car-

riers, §§ 29, 92, 95; Galt v. Adams Ex. Co., reported in Lawson on Carriers, 426, 427, etc.; the N. Y. Cent. & Hudson River R. R. Co. v. Trauloff, reported in Thomson on Carriers of Passengers, 502, 503, etc.; Hollister v. Nowlen, 19 Wend., 234; S. C., Thompson on Car., 489; Levoise v. Gale, 17 La. Ann., 305; 8 Cent. Law Jour., 291, 292, 293; Boskowitz v. Adams Ex. Co., 9 Cent. Law Jour., 389.

VII. An application to set aside a judgment by default and permit the defendant to answer should show that there is a good defense, and should also show good cause or excuse for not pleading it at the proper time.

VIII. The bill of lading on which defendant rests its showing of a meritorious defense was not a contract between the shipper and carrier, and its exemptions from liability of the latter cannot bind the shipper. Lawson on Contracts of Carriers, §§ 114, 105, 219, 95, pp. 97, 29, note 32; Galt v. Adams Express Co., reported in Lawson's Carriers, 427; 2 Greenleaf on Evidence, § 216; Angell on Carriers, § 247; Redfield American Railway Cases, 2d ed., 268, 269; Levoise v. Gale, 17 La. Ann., 305; 5 Cent. Law Jour., 134, 135; 8 Cent. Law Jour., 291, 292.

IX. The bill of lading on which defendant rests its showing of a meritorious defense is contrary to the statutes and public policy of the state of Texas, and invalid. R. S., art. 278; Houston & Texas Central Railroad v. John A. Peel, decided by Court of Appeals at Galveston term, 1881; Heaton & Bro. v. Morgan's Louisiana & Texas Railroad and Steamship Co., vol. 4, No. 24, Texas Law Journal; Crosby v. Houston, 1 Tex., 203; Roher on Inter-State Law, 49; Anderson v. Pond, 13 Pet., 65; Story on Conflict of Laws, § 304a.

X. The motion of appellant, with affidavits thereto attached, asking to set aside the judgment by default, did not attempt to meet the charge of the petition that the goods were lost through the carelessness of defendant. The

petition in both counts charges that appellee's goods and property were burned through the carelessness of defendant while in its custody as a common carrier.   In defendant's motion to set aside the judgment by default, there is no attempt to show that the goods were not lost through the carelessness of defendant.    2 Redfield's American Railway Cases, 268; id., 2d ed., 263, 264; Lawson on Carriers, § 133, note 33; §§ 132, 28, 29; Galt *v.* Adams Express Co., 427, reported by Lawson on Carriers; 2 Redfield on the Law of Railways, 5th ed., § 178, divisions 5, 11, 12, thereof; Bank of Kentucky *v.* Adams Express Co., 4 Cent. Law Jour., 35; Kerby *et al. v.* Adams Express Co., reported in 3 Cent. Law Jour., 435; Boskowitz *et al. v.* Adams Express Co., reported in 8 Cent. Law Jour., 389; 8 Cent. Law Jour., 291.

XI. The court did not err in permitting plaintiff to refer to her bill of particulars to refresh her memory while she was answering questions propounded by her counsel.  2 Phillips on Evidence, 915, 926 (10th English ed.); Flato *v.* Brod & Hemmi, 37 Tex., 735; 1 Greenl. on Ev., §§ 436–438; 1 Starkie, 184.

XII. The admission of improper evidence, cumulative in its nature, will not authorize a reversal of the judgment, when there was sufficient competent evidence before the jury to warrant the verdict.    Pridgen *v.* Hill, 12 Tex., 378; Mercer *v.* Hall, 2 Tex., 287; Beaty *v.* Whitaker, 23 Tex., 529; Johnson *v.* Brown, 51 Tex., 65.

Gould, Associate Justice. — This suit was instituted by Mrs. V. C. Burke, September 13, 1880, to recover of the railway company damages for the loss and destruction of certain paintings, jewelry, clothing, furniture and household effects, shipped by her at New Orleans, La., to be carried to Austin, Texas, under a contract made at New Orleans with a connecting line and agent of the appellant railway company, by the terms of which the latter agreed

to carry said property from Houston, Harris county, to
Austin.  The property shipped was stated in detail, with
values aggregating as follows: Paintings, $8,510; jew-
elry, $2,320; clothing, $6,081; furniture, household effects,
etc., $11,492.50.   Total, $28,403.50.

The petition stated "that said company has an office
for the transaction of its business as a common carrier in
the city of Austin, Travis county, Texas, at which place
the agent of said company is Robert S. Collins."   On this
petition citation issued and was served September 20th,
on Robert S. Collins, by delivery of a copy thereof, the
citation stating the nature of the demand set out in
plaintiff's petition to be "a prayer for judgment in favor
of said plaintiff against said defendant for $28,403.50
damages, on account of the loss by defendant of the goods
and property of said plaintiff, as will more fully appear
by plaintiff's original petition on file."   On October 8th
there was a judgment by default and a writ of inquiry
awarded.   Two applications to set aside the default were
made and overruled during the term, the defendant being,
however, allowed to introduce evidence as to the quantity
and value of property shipped, as though no default had
been taken; the result of the trial being a verdict and
judgment for plaintiff for $20,500.

The questions presented in this court are numerous,
but may be classed under three heads: 1st. The suffi-
ciency of the citation and service.   2d. The sufficiency of
the showings to set aside the default.   3d. Various rulings
of the court on questions of evidence and practice, and in
its charge, alleged to be erroneous.

The Revised Statutes require the citation to state "the
nature of the plaintiff's demand," and provide, where
the citation is served within the county in which the suit
is pending, that it may be executed by delivering to the
defendant a true copy of the citation; but where served
without the county, directs that "the officer shall also

deliver to the defendants, and each of them, in person, the certified copy of the petition accompanying the citation." R. S., arts. 1215, 1219, 1220.

It is objected that the citation does not state the nature of plaintiff's demand. We do not think the statute designs the citation to supply the place of the petition, or that it should state the nature of the demand otherwise than in a general way, avoiding any attempt at details, other than those prescribed. It should state "the date of the filing of plaintiff's petition, the file-number of the suit, the names of the parties and the nature of the plaintiff's demand;" the last to be stated sufficiently to notify defendant of the character of the demand against him. It would be unfortunate if citations could be objected to like a petition; and anything approaching strictness in requiring the nature of the demand to be set out with fullness and accuracy of detail, would lead to danger of such a result. The statement in the citation we are considering is meager, but we cannot say that it was insufficient.

In suits against incorporated companies, the statute says that the citation "may be served . . . upon the local agent representing such company or association in the county in which suit is brought." R. S., art. 1223. In our opinion, it sufficiently appears from the averments of the petition that Robert S. Collins was the local agent of the company in Travis county, although the petition does not follow the language of the statute.

The further point is raised that there was no judicial ascertainment of the agency of said Collins. The answer is, that there is no practice prevailing in this state requiring anything further to appear to show the agency than does in this case.

The final objection to the service, that " defendant was entitled to a copy of plaintiff's petition accompanying the citation," is answered by the fact that this service was had

in the county in which the suit was pending, and in this case the statute does not require service of anything but "a true copy of the citation." R. S., art. 1219.

Our conclusion on this branch of the case is, that the defendant was properly cited.

On the third day after the default defendant filed a motion to set aside the judgment, supported by affidavits, from which it appears that, according to the regulations of the company, Collins should have forwarded the citation to the vice-president at the general office at Houston, but by mistake forwarded it to the general freight agent at that place. That Waldo, the freight agent, was temporarily absent from September 12 till October 9; and when the citation reached his office about September 22, it was placed in a pigeon-hole by a clerk, and there remained until after the default; that by reason of the mistake, and the absence of Waldo, no officer, charged with the management of its general business, had any information of the service of citation in this suit; that the claim of plaintiff had been presented in the latter part of June, and the same had been under investigation by Waldo, in the line of whose duties said business was, and information had been obtained that the claim was excessive and evidence could be adduced to that effect.

Beside the charge, made on information, that the claim was exaggerated and unjust, the motion showed that the bill of lading given at New Orleans by the connecting line, Morgan's Louisiana R. R. & Steamship Company, for itself and the Houston & Texas Central Railroad, showed a contract at special rates, $110 for lot, and contained the following: "It is also stipulated that the several lines or companies named in this bill shall not be liable for loss or damage from breakages, etc. Nor shall they be held responsible for gold, silver or precious stones, metals, jewelry or treasures of any kind, unless bills of lading are signed therefor, in which the actual value is stated.

It is further expressly stipulated that the acceptance of the bill of lading recognizes the same as a contract binding both carrier and shipper." The bill of lading shows the shipment of one piano, five trunks merchandise, fifteen boxes sundries, four boxes shrubbery, three boxes marble, three barrels general ware, etc., including numerous articles of furniture. In connection with its motion, defendant tendered an answer consisting of a general denial, and a special answer stating the terms of the bill of lading, and proceeding, "And defendant says that the said contract or bill of lading for the transportation of plaintiff's said goods and property contained no notice of the said articles of gold, silver, precious stones, metals, jewelry, treasures, works of art, nor the value thereof; wherefore defendant says," etc.

Counter affidavits opposing the motion to set aside the default were filed by plaintiff, but it is not important to state their substance at this period. We think the facts stated so far excused the failure to answer, that, if there was also a showing of a valid and meritorious defense, the court should have allowed the defendant an opportunity to make that defense available. The case made out is one of mistake and accident appealing strongly for relief from the judgment, if it be made to appear that the defendant would otherwise be deprived of a valid and meritorious defense. The purport of that defense as stated in the motion and affidavits is, 1st, the excessiveness of the claim; 2d, that by the terms of the bill of lading defendants were not liable — the jewelry, works of art, articles of gold and silver, etc., not being noticed therein, nor their value stated.

The court, whilst refusing to set aside the default, allowed the railroad company to interpose its defense as to the quantity of goods shipped and their value, and to introduce evidence on those points as if no default had been taken. In so far as relates to the defense that the

claim was excessive, appellant cannot complain that he was deprived of an opportunity to make it fully available.

The only other defense set up at this stage of the case was, that, by the terms of the bill of lading, defendants were not liable. Was this a valid defense under the statutes of this state?

In 1860 it was enacted, "That common carriers of goods for hire, within this state, on land or in boats or vessels on the waters entirely within the body of this state, shall not limit or restrict their liability as it exists at common law, by any general or actual notice, nor by inserting exceptions in the bill of lading, or memorandum given upon the receipt of the goods for transportation, nor in any other manner, except by special agreement between the carrier and shipper, reduced to writing, and signed by the parties or their agents." In December, 1863, this act was amended so as to read: "Railroad companies and other common carriers of goods, wares and merchandise, for hire, within this state, on land or in boats or vessels on the waters entirely within the body of this state, shall not limit or restrict their liability as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading, or memorandum given upon the receipt of the goods for transportation, or in any other manner whatever; and no special agreement made in contravention of the foregoing provisions of this article shall be valid." Pasch. Dig., art. 452 and note 329. As thus amended, this article was carried into the Revised Statutes, and is still the law of this state. R. S., art. 278.

The defense that the company was exempt from liability because of the exceptions or stipulations in the bill of lading, seems to us plainly invalid under this statute. The claim is not only to limit and restrict the liability of the company by provisions inserted in the bill of lading, but to make these provisions relieve them from all lia-

bility.    For reasons of public policy, and having regard, doubtless, to the "inequality of the parties; the compulsion under which the customer is placed, and the obligations of the carrier to the public," the legislation of this state, and the previous decisions of our courts, hold common carriers liable as at common law for all losses "not occasioned by the act of God or public enemies," and declare invalid any exceptions or special contract seeking to vary that liability.    Chevallier v. Strahan, 2 Tex., 115; Arnold v. Jones, 26 Tex., 337.    See also Heaton & Bro. v. Morgan's La. & Tex. R. R. & S. S. Co., Court of Appeals, 4 Tex. L. J., p. 375; and R. R. Co. v. Lockwood, 17 Wallace.

Whilst, under our statute, it is no defense for a carrier sued for goods lost, however valuable, to reply that by the terms of the bill of lading he was not responsible for such goods, because beyond question he would at common law be liable for the loss of money or other valuables, whether a bill of lading were given specifying them or not, it is not believed that the statute in any wise restricts the operation of the common law rule, that where the shipper of valuables practices a fraud on the carrier, either by his acts or omissions, fraudulently concealing the value of the article shipped, the carrier is discharged. Gibbon v. Poynton, 4 Burr, 2298; Batson v. Donovan, 4 Barn. & Ald., 373; Orange County Bank v. Brown, 9 Wend., 85; Magnin v. Dinsmore, 62 N. Y., 35; Oppenheimer & Co. v. U. S. Ex. Co., 69 Ill., 62; Hollister v. Nowlen, 19 Wend., 234; N. Y. Cent., etc., v. Fraloff, 100 U. S., 24, reported also in Thompson on Carriers of Passengers, p. 502; Lawson on Carriers, sec. 20, and cases cited.

If the defense had been made, and substantiated by affidavits, that Mrs. Burke, knowing the contents of the bill of lading in use by the company, and knowing that good faith to the company required her to give information in regard to jewelry, articles of gold and silver, etc.,

shipped by her, concealed the fact and value of the shipment of such articles, shipping them in a way that would naturally lead the carrier to believe them of small value, there are common law authorities that this would operate a fraud on the carrier and would discharge him from liability. Batson *v.* Donovan, *supra;* Lawson on Carriers, sec. 20, and authorities cited. But whatever effect the giving of notices, or the insertion of provisions in the bill of lading, "designed simply to secure good faith and fair dealing on the part of the employee," may have if brought home to the knowledge of the owner, to protect the carrier from fraud, we think it clear that in this state they can only be looked to for that purpose, and cannot be treated as changing the contract or changing the liability of the carrier.

The original motion to set aside the default did not state facts showing a valid, meritorious defense, and we therefore cannot say that the court erred in overruling it.

On December 8th, during the same term of court, the presiding judge, however, not being the same as when the first motion was passed on, the defendant filed another motion to set aside the default, proffering to go to trial at once. The substance of this application is thus stated in the brief of counsel for appellant:

"The application prays the court to vacate the order of October 16, 1880, and to now set aside the judgment by default on terms, permitting defendant full answer and defense to the merits of plaintiff's cause of action; and, if this be not granted, defendant prays that said order be so modified in its terms as to permit defendant to make the following additional defenses:

"1. That by express agreement between plaintiff and the said Morgan's Louisiana & Texas Railroad and Steamship Company at the time of and before the shipment of the goods and property mentioned in plaintiff's petition, it was agreed that plaintiff should take the risk

of loss of said goods and property exceeding the sum of $200, which sum plaintiff agreed, in case of loss of said goods, to receive in satisfaction therefor, and this in consideration of said company's undertaking to carry said goods and property below the usual legal and ordinary rates.

"2. That plaintiff fraudulently and deceitfully concealed the true value and nature of said goods and property, and by her acts and by the manner of packing and billing said goods, and by her declarations to the agent of said Morgan's Louisiana & Texas Railroad and Steamship Company, at the time of and before the shipment of said property, induced said company and also this defendant to believe that said property was of small value, and consisted only of second-hand household goods and furniture; and plaintiff fraudulently concealed within the same the jewels, works of art, silverware, and all the property other than household goods and furniture mentioned in plaintiff's petition; and that the fact of said concealment was unknown to defendant; and defendant received said property believing that the same consisted alone of second-hand household goods; and that defendant ought not, by reason of these facts, to be permitted to recover for the property so concealed.

"3. Same defense as set forth in proposed original answer, pleading terms of bill of lading. Said application closed as follows: And defendant says, that at the time of its original application to set aside the judgment by default herein, the said defenses foregoing were not fully known to defendant or its counsel, or, if known, the evidence to support the same was not within the jurisdiction of this court, or in power of defendant to be produced on said hearing; and defendant asks that reference be had to its original application to set aside said default in aid hereof.

"Application made reference to depositions on file, which were read in support thereof, as follows:

" S. C. Childress testifies: I made a contract with plaintiff for shipment of household goods by steamship to Clinton, thence via railroad to Austin. Bill of lading was signed Sloo.. The character of goods shipped, according to her representations to me at the time they were delivered for shipment, was, as old second-hand household goods. Plaintiff sent the man who packed the goods to depot to have them shipped by him, and he took the bill of lading for them. Was then and am still in employ of Morgan's line. The goods were shipped as old, second-hand household goods; owner's risk, and so stated in bill of lading."

Beyond the deposition of Childress no attempt was made to show facts substantiating the defense offered, nor was either motion or answer verified by affidavit.

In resisting the former motion, the affidavits of the plaintiff, and of her mother, Mrs. De Bolle, had been filed — the substance of which is thus stated in the brief of appellee:

" The former was, in substance, that she went four times to the office of Morgan's Louisiana & Texas Railroad and Steamship Company for the purpose of inquiring as to the best and safest way of shipping her household effects from New Orleans to Austin, Texas; that she was referred to the agent of said company and talked with him, on three different occasions, relative to said shipment; that she distinctly said to him that she had very valuable paintings, with costly and elegant furniture; that she feared they might be injured in the loading and unloading of the cars and steamer, and asked him how far the company would be liable. He replied that if any articles were really injured or destroyed, the company is liable and will pay for them; that she also asked

him how much baggage can each passenger take with
them. 'Only one hundred and fifty pounds,' was the re-
ply of said agent. Then she said to the said agent, in
substance: ' Can I, or would it be better for me, to send
my trunks at the same time with my household effects?'
He replied: 'You can, and it would be better.' That
she was not asked by said company, or any of its agents,
as to the nature or quality of any of the articles she pro-
posed to ship to Austin; that she was not told by said
company, and did not know, that said company proposed
to claim for itself and connecting lines exemption from
liability on account of the nature of some of the goods
shipped; that the only requirement demanded by said
company was, that each separate package of goods should
be numbered, so that in the event of its loss it could be
found; with that requirement she complied. A portion
of the lost goods sued for were shipped on June 3, 1880;
on June 4, in the morning, the packer carried down other
packages of the goods lost, and reported to her that the
goods shipped the previous day had left New Orleans.
About seven o'clock P. M., June 4, the packer brought
her the bill of lading of all of the goods, and said: ' We
just got down in time to ship the remaining goods; that
the car started right away with the goods, and I hurried
up to the office of C. A. Whitney & Co. and got this bill
of lading.' That she never assented to the exceptions
and limitations referred to in the bill of lading. Trans.,
79–81.

"Mrs. De Bolle in substance swore that she had lived
with her daughter, the plaintiff, for three years next be-
fore her removal to Texas; that she was well acquainted
with the goods sued for; that she accompanied plaintiff
on two occasions when she went to the office of C. A.
Whitney & Co. to inquire as to the shipment of the
goods sued for, and heard the conversation with the agent
of said company, relative to the shipment of said goods,

detailed by plaintiff in her affidavit in this case. That she heard plaintiff tell said agent that she had valuable paintings to ship. She also informed him that the furniture was fine and costly. That she heard the advice of said agent as to the shipment of the trunks, in which conversation and connection she, Mrs. De Bolle, told him 'that there would be valuables in said trunks,' meaning, and intending to convey to his mind, that there would be jewels and other articles of great value in said trunks; that there was no intimation by said agent or any one else, in either of these conversations, of any restrictions or limitations of liability by reason of the value or character of said shipment."

Bearing in mind that these sworn statements negativing any concealment or fraud had been on file for near two months, it would seem reasonable to expect that the defendant, in asking the court to be allowed to make the defense of fraudulent concealment, would have filed affidavits showing its version of what passed between plaintiff and its agent, showing what there was in the manner of packing, etc., calculated to deceive, and showing at least that plaintiff had knowledge of the contents of the bill of lading. The very meager statements of Childress, being wholly silent as to plaintiff's knowledge, leaving throughout the charge of fraud unsubstantiated otherwise than by indulging largely in inference and surmise, did not amount to such an establishment of the charge as required the court to admit the defense. Especially do we think that the showing was insufficient when it is recollected that the court had already before it counter-affidavits giving in detail a statement showing the absence of fraud. Assuredly if the defense of fraud had been substantiated by affidavits on the one hand, and denied by conflicting affidavits on the other, the court should, in case of doubt, have allowed the defendant to have a jury pass upon the issue. But regarding the ap-

plication as itself insufficient, we conclude that the court did not err in overruling it.

The questions of evidence and practice which are presented are quite numerous.

We propose to consider, first, defendant's 14th assignment of error, presenting the proposition that evidence of G. B. Burke as to the cost of pictures should have been withdrawn from the jury when it transpired that the same was hearsay.

In plaintiff's bill of particulars of articles lost are the following articles, viz.:

Child and Dog, by Inman........................................ $1,500
Three portraits, by Sully, at $1,000 each........................ 3,000
Group of children, by Beard and Moise........................... 1,000
Portrait, by Fowler............................................. 500

It appears that these were family portraits and paintings by distinguished artists, and there was considerable evidence bearing on the question of their value. Mr. G. B. Burke, a son of plaintiff's deceased husband, Glendy Burke, testified that each of those paintings named above, except the last, cost $1,000, and that the last, a portrait of Glendy Burke, by Fowler, cost $500. On cross-examination it was developed that he had no personal knowledge of the cost, but had learned of it from his father and traditions in the family. We think that this was hearsay testimony, and that the court should have sustained the motion to exclude it. Appellee replies that there was sufficient competent evidence before the jury to warrant the verdict, and that the admission of improper evidence, cumulative in its nature, will not authorize a reversal of the judgment. The testimony of Mrs. Burke, and of artists of eminence in New York, tends to show that, as works of art, the market value of these paintings, in New York, or at a point where such works of art can be said to have a market value, was fully as great as the cost price affixed by G. B. Burke. On the other hand, the tes-

timony of Moise, an artist, tends to fix their cost at prices considerably less. In its charge the court gave the jury as the standard of value of the articles lost, their market value at Austin; and if any of the articles had no market value at Austin, and yet had a market value at other places, that value at the nearest place to Austin where it existed was made the standard. The court also charged, "In determining the value of family portraits, which have no market value, if you find such to have been lost, you may look to the original cost of the same, and to the probable cost of reproducing or replacing the same, as shown by the testimony." In view of the prominence given in this charge to the question of original cost, we are unable to see that evidence as to such cost is merely cumulative of other evidence as to value. The verdict of the jury is general, and does not show what value they affixed to the pictures; nor can we know how far they were influenced in valuing them by the evidence of Mr. Burke as to their cost. "A party has a right to have none but legal evidence submitted to a jury. And where that which is irrelevant" (or hearsay) "has been admitted against the objections of the party, if it may have had an improper influence upon the jury it will require a reversal of the judgment." Waul v. Hardie, 17 Tex., 558. In our opinion this error is fatal to the judgment.

We are also of opinion that the motion to suppress the depositions of Huntingdon and others should have been entertained and the depositions suppressed. The depositions were filed December 9, but were not indorsed, as required by the statute, by the postmaster mailing the same, so as to show that he received them from the hands of the officer before whom they were taken. R. S., art. 2231. A motion to suppress the depositions for this reason was made and overruled under the following circumstances:

The depositions had been on file an entire day. The

case was called for trial on regular call of docket. Defendant's counsel, Mr. Goldthwaite, said he presumed the defendant would be ready, when Walton, Green & Hill, his associates, came into court. While the court was waiting for associate counsel, Mr. Goldthwaite prepared the objections in writing, filed the same with the clerk of the court, and said in open court: "If your Honor please, I desire to call the attention of the opposing counsel to these objections which I have filed to the depositions of the witnesses on file," and offered the paper just filed to the opposing counsel, who did not take it, but who then said: "Read them to the court;" whereupon they were read to the court and argued.

1. The motion was resisted by counsel for plaintiff, because:

1. It came too late.

2. The plaintiff had no legal notice of the motion.

The court sustained plaintiff's objections and refused to suppress the deposition on the grounds of objection made by the defendant. Defendant excepted.

The statute, when the depositions have been on file an entire day, says: "No objections to the form thereof, or the manner of taking the same, shall be heard, unless such objections are in writing, and notice thereof is given to the opposite counsel before the trial of suit commences." R. S., art. 2235. If the ruling of the court was based on the ground that the trial had commenced, we think it erroneous. The object of the statute is to secure a party from being taken by surprise by such formal objections to his evidence after entering on the trial. If such objections could be made after both parties had announced ready, the object of the statute would be defeated. But until such announcement, we do not think that the trial of the suit had commenced, within the meaning of the statute. In this case the notice was not given in writing, and, beyond question, notices which become necessary in the progress of a suit should ordi-

narily be in writing.   Sayles' Practice, secs. 630, 631;
R. S., art. 1453.   But we have seen that actual notice
was given to counsel in open court, and we are of opinion
that, under the circumstances, the whole thing having
transpired at the time, and in the presence of the court,
and as a part of the proceedings in the case after called
for trial, that the notice might well have been held suffi-
cient.   As the judgment is reversed on other grounds, it
is not necessary to determine whether this would be of
itself an error requiring a reversal.

In regard to the remaining questions, we propose, with-
out attempting their discussion, to state concisely our
conclusions on such of them only as may again arise on
another trial.   The court did not err, or exceed its discre-
tionary power, in refusing to exclude certain interroga-
tories as leading, but did err in allowing witnesses to give
their opinions as to the measure of damages for lost furni-
ture, that being a matter of law.

Nor did the court err in allowing the witness Mrs.
Burke to refresh her memory as to the numerous articles
lost and their values, by referring to a bill of particulars
known by her to be a copy of a correct memorandum of
articles and values made by herself.   1 Greenleaf on Ev.,
secs. 436-438.

We do not think that the interrogatories and answers
of Beard, Huntingdon and others should have been ex-
cluded as irrelevant.   They tended to show the market
value of the portraits and paintings; to explain, as far as
might be, the circumstances affecting the market value
of such paintings.

We think the pleadings of plaintiff were sufficient to
authorize evidence of the character and value of the pict-
ure frames, and the contents and value of the library
and trunk.

We see no error in other rulings of the court in admit-
ting or excluding evidence.

We have seen that the charge of the court made the

market value of the articles lost the measure of damages, but added a clause as follows: "In determining the value of the family portraits, which have no market value, if you find such to have been lost, you may look to the original cost of the same, and to the probable cost of reproducing and replacing the same as shown by the testimony." The measure of damages allowed in this clause of the charge is objected to, but the brief does not inform us of the grounds of objection or the precise legal question intended to be made. That part of the charge is in accordance with the rule recently laid down by the supreme court of Massachusetts. Green v. Boston (1879), Cent. L. J., vol. X, p. 208.

In regard to a family portrait which might be reproduced, the artist and the subject both being still accessible, it is not perceived why the owner would not be entitled to supply the lost portrait, and to recover of the carrier the cost. This is said to be the owner's right in case of lost articles generally. O'Hanlan v. G. W. R'y Co., 6 Best & Smith, 493 (118 Eng. Com. Law, 491); Wood's Mayne on Damages, p. 401. But when it is impracticable to replace the painting, and where the original cost was incurred at a time long past, and under circumstances differing widely from those affecting the present value, the charge given would be of doubtful applicability, and, at all events, should be better qualified or explained so as to guard the jury against making the first cost and the cost of replacing the exclusive measure of value. We do not understand the plaintiff as claiming, or the charge of the court as allowing, damages because of the peculiar value attached by the owner to the portraits, the "pretium affectionis," as it is styled. The claim of the plaintiff seems to be, that as works of art, paintings by artists of established reputation, of subjects calculated to give those paintings value in the eyes of those who buy such works of art, the lost portraits had a value, aside from any pe-

culiar value for family reasons.   As bearing on this claim we cannot say that the charge given was erroneous, although we think it would have been better adapted to the case had it been qualified or explained.

For the reasons heretofore given the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 21, 1881.]