### C. A. McColpin et al. v. Estate of M. McColpin, Deceased, et al.

#### No. 1211. Decided June 1, 1903.

**1.—Certified Question—Conflicting Hypotheses.**

A certificate from the Court of Civil Appeals submitting a question of law (inheritance) arising, first, upon the hypothesis that ·claimant was legally adopted as a child and heir under the laws of Kentucky, and, second, upon the hypothesis that there was no such legal adoption, but an agreement to adopt, on the faith of which claimant acted, does not, in the absence of a finding as to which was established by the facts, present, as required, the very question of law to be decided by the Supreme Court. (Pp. 561, 564.)

**2.—Same.**

Where, on appeal, it becomes necessary for the court, in remanding for trial, to decide the law governing each of two inconsistent states of fact, a certificate submitting such questions to the Supreme Court should show the state of the record which thus makes it necessary to treat the facts hypothetically. (P. 564.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Llano County.

*John C. Oatman,* for appellants.

*Chas. L. Lauderdale,* for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—Certified questions from the Court of Civil Appeals of the Third Supreme Judicial District, as follows:

"This.is an appeal from the judgment of the District Court in a probate proceeding, the only contest being one of heirship. J. H. Cummins, as administrator of the estate of M. McColpin, filed his final account, showing that after the payment of all debts owing by the estate, certain real and personal property remained on hand, and stating that his wife, Savannah Cummins, was the adopted daughter of M. McColpin, and sole heir to the residue of said estate.

"C. A. McColpin and other collateral relatives of the deceased filed an answer contesting the right of Mrs. Cummins to inherit the property, and claiming that they were the heirs of M. McColpin, deceased.

"Thereafter Mrs. Cummins filed an elaborate petition, alleging, in substance, that M. McColpin and his wife M. B. McColpin had duly and legally adopted her in the State of Kentucky, and in accordance with the laws of that State. · She also pleaded in the alternative, that if she had not been adopted, as alleged, that McColpin and his wife had made a contract with the Louisville Baptist Orphans' Home, by which they had agreed and promised to adopt her and make her their heir; that upon the faith of such promise made to said orphans' home, which was acting for Mrs. Cummins, she was delivered to McColpin and his wife when she was about seven years of age; and, acting upon the faith of said promise, she continued to reside with them as their child until after the death of Mrs. McColpin, and until petitioner married her husband John Cummins, and during all that time treated said Mc-Colpins as a child should treat a parent; and that McColpin and his wife frequently declared that they had adopted the petitioner and that she was their heir. Wherefore, Mrs. Cummins asserted that she having fully complied with the oral contract for her adoption, said contract is now binding upon his estate and the contestants.

"To this plea the contestants responded to the effect that under the laws of Kentucky there could be no adoption, except by an instrument of writing duly acknowledged and recorded, and averred that no such writing was executed and recorded by McColpin and his wife in reference to Savannah Cummins, the petitioner. ‑

"The pleadings of the parties are fully set out in their respective briefs, to which the Supreme Court is hereby referred for more elaborate statement concerning the pleadings.

"The case is submitted in this court on the following conclusions of fact filed by the trial judge:

" '1. The petitioner, Mrs. Savannah Cummins, was regularly received into the Louisville Baptist Orphans' Home, of Louisville, Ky., under the name of Savannah Salyer, on the 3d day of March, 1884, being at that time about ten years old, and her father and mother both·

being dead, and she remained in said home continuously until about the 20th day of October, 1887.

" '2. Said Louisville Baptist Orphans' Home was at that time and is now duly incorporated under a special act of the Legislature of the State of Kentucky, and by the said special act of incorporation said orphans' home was specially authorized to execute contracts for the adoption of such children as were inmates of said home, which contracts were to be in writing, signed by the president of such institution and by the person or persons contracting to adopt such child or children, which contracts were to be acknowledged as deeds are required to be acknowledged by all the parties thereto, and to be recorded in the office of the clerk of the County Court of Jefferson County, Kentucky, by the execution of which instrument the child so adopted was to become the heir at law of the person so adopting, and capable of inheriting as such. Said institution was specially authorized to take and care for destitute orphan children, and to apprentice them or deliver them into the care and custody of other person or persons under such contract or agreement as it might see proper to do in the interest of such child or children.

" '3. On the 20th day of October, 1887, for the consideration herein below stated, M. McColpin and his wife M. B. McColpin went to the said home and made with it, the said corporation acting on behalf of said Savannah Salyer and under its charter, a verbal contract to adopt said Savannah Salyer as their own child, to take her home with them into their custody, to educate, care for, nurture and train her as their own child, to leave her their property at their death, and that at their death, all of their property should and would descend and pass to and vest in her in the same manner and to the same extent and proportion as though she had been born to them in lawful wedlock and were their natural heir, in consideration for which contract and agreement on the part of said M. McColpin and his wife the said Louisville Baptist Orphans' Home, for itself and on behalf of said Savannah Salyer, and she through said home, agreed and contracted with said M. McColpin and his wife that said Savannah Salyer should be by said home delivered into the custody of said M. McColpin and wife, and should and would during the same time, in the same manner and to the same extent as though she were their natural child, remain and reside with them and to them devote her companionship and services; and the said M. McColpin and wife, in consideration for said agreement and contract on the part of said home and on behalf of said Savannah, further agreed and promised to execute said contract in writing and in the manner required by the laws of said State.

" 'Under said contract, and upon the faith that it would be executed in writing by said M. McColpin and his said wife, and would be fully performed by them, said home delivered said child Savannah, on October 20, 1887, to the custody of said M. McColpin and his wife, and said Savannah, believing and relying upon their said contract, will-

ingly went into their custody, and from said date until the date of the death of M. B. McColpin in 1891, she remained with and faithfully and continuously resided with and devoted to said M. McColpin and his said wife all of her time, companionship and services of the same character, in the same manner and to the same extent as though she had been their natural daughter, and after the death of M. B. McColpin, at said date, said Savannah continued in the same manner and to the same extent to reside with and devote her companionship, services and attention to the said M. McColpin as though she were his natural daughter until her marriage in 1892, she during all of that time believing and relying upon the belief that said contract was valid and binding upon said M. McColpin, and that he had also executed the same in the manner and form required under the laws of Kentucky incorporating said home.

"'In 1892 said Savannah, with the consent of said M. McColpin, married John Cummins. Prior to that time M. McColpin had paid all the expenses of and taken care of said Savannah, sending her to the country schools at different times. In 1892, M. McColpin moved·away from the place where said Savannah was residing, but in 1898 requested her and her husband to move to Llano, where said McColpin was in business, in Texas, which she did at his request, and he then went into the home of said Savannah and resided there with her until the time of his death in 1900, she devoting to him at all times the same character of companionship, services and attention as though she had been his natural daughter.

"'During all the time from said 20th October, 1887, up to the time of his death, said McColpin repeatedly declared that said Savannah ·was his adopted daughter, and she believing she was so, and all of her actions and conduct towards him during all of that time were induced by and done upon that belief, and by reason of her reliance upon said contract.

"'4. On October 20, 1887, before said McColpin took said Savannah from said home, said home caused to be prepared in writing an adoption contract, such as is described in the preceding paragraph number 3, in substance, and said McColpin and wife and the officers of said home took said writing to the courthouse to sign same, but did not so sign it, owing to the courthouse being closed, and said officers permitted said McColpin and wife to take said child home with them on the promise and agreement that they would in a short time execute said contract and return same to said home (and they would not have permitted said McColpin and wife to have taken said child away except upon said promise), but there is no evidence that said contract was ever so executed and returned to said home, and it is not among the papers of said home, and there is no record of its having been returned to the same.

"'5. Said M. McColpin was never married but one time, and both he and his wife M. B. McColpin are dead, and neither of them left any

child or children. The father and mother of each of them died before they did.

" 'C. A. McColpin, M. E. Lindsey, N. H. Stayton, M. A. Wolf, J. H. McColpin, B. O. McColpin, W. A. Page, E. M. Page and J. O. Page, petitioners herein, are the sole surviving brothers and sisters and descendants of brothers and sisters of said M. McColpin, deceased.

" '6. Said Savannah Cummins complied in every particular with and fully performed her part of the contract made on her behalf with said M. McColpin and his wife, described in the preceding paragraph number 3.

" '7. M. McColpin died in Texas about the middle of February, 1900, intestate, and he left an estate consisting of real· and personal property.'

"With this statement and explanation, the Court of Civil Appeals of the Third Supreme Judicial District of Texas desires to certify to the Supreme Court for decision the following questions:

"1. If M. McColpin and his wife complied with their oral contract by which they promised to adopt Savannah in the State of Kentucky and in accordance with the laws of that State, would such adoption entitle her to inherit as their child their property in the State of Texas?

"2. If such adoption in conformity with the laws of Kentucky was not shown, is the petitioner Savannah entitled in law or equity to the property of M. McColpin, because of the fact that she has fully complied with all the obligations which the oral contract of adoption placed upon her?"

The first question is submitted upon the hypothesis that there was an adoption in Kentucky in compliance with the laws of that State, while the second question supposes that there was no such adoption. In the case of Cleveland & Co. v. Carr, 90 Texas, 393, a certificate thus presenting questions was considered and held not to show "the very question" involved, quoting from the opinion in Railway v. Belcher, 88 Texas, 549, as follows: "It is evident that the two supposed states of facts upon which the respective questions are based, can not coexist, and that therefore one or the other of the 'issues of law' presented does not 'arise in a case pending before the Court of Civil Appeals.' Under the decisions in these cases it is necessary for the Court of Civil Appeals, in certifying questions, to find which one of two inconsistent facts existed, as otherwise this court is called upon to decide a question which may prove, by a subsequent finding of the true facts by the Court of Civil Appeals, to be abstract. Sometimes it becomes proper for an appellate court, in sending back a case for another trial, to state the law governing both of the two inconsistent states of fact. The result of the decisions of this court is that, when such is the case and the questions are certified to· this court, the certificate should show the state of the record which makes it necessary to thus treat the facts hypothetically. The present certificate shows that the case was submitted in the Court of Civil Appeals upon conclusions of fact found by the trial judge.

We discover that there is a contention in the briefs of the parties as to the effect of such findings, i. e., whether they show that there was no legal adoption in Kentucky or not. We do not feel authorized to forestall the action of the Court of Civil Appeals upon this contention, by assuming which one of the questions certified the facts present, when that court has not so determined, but has certified both questions. If the first question were considered it would be found involved in· some doubt and conflict of authority. A decision of the second might lead to a very different disposition of the case. Wadsworth v. Chick, 55 Texas, 241. But in no treatment we could give the subject could we feel assured that we were deciding the real question upon which the judgment of the Court of Civil Appeals must turn.

*Certificate dismissed.*