**HUTCHISON v. HAMILTON et al.**
(No. 1182—5176.)

Commission of Appeals of Texas, Section A.
March 13, 1929.

J. A. Wheat, of Seymour, and H. B. Penix and W. H. Penix, both of Wichita Falls, for plaintiff in error.

James A. Stephens and D. J. Brookreson, both of Benjamin, and J. S. Kendall, of Munday, for defendants in error.

CRITZ, J. This suit was originally instituted in the district court of Knox county, Tex., by W. A. Hutchison, plaintiff in error, against Robert Hamilton et al., defendants in error, on three nonnegotiable promissory notes fully described in the petition. The petition declares on these notes with interest and attorney's fees as therein provided.

The pleadings and evidence show conclusively that these notes were executed as part consideration for the following contract:
"The State of Texas, County of Dawson.

"This contract made and entered into by and between W. A. Hutchison, party of the first part, of Midland County, Texas, and Burnett, Spikes and Hamilton, parties of the second part of Knox County, Texas; witnesseth: Said party of the first part agrees to pasture for said parties of the second part about 2000 head of cattle on what is known as the Cedar Lake pasture, including two one section pasture, containing 59 sections, located in Gaines County, Texas, 12 miles southeast of Seagraves, at Station on the Santa Fé Railroad.

"Party of the first part agrees that no other cattle shall be put in this pasture except second parties cattle and that said second parties are to have exclusive control of same.

"Said first party is to receive second parties cattle at Seagraves, and take them to pasture, and first party binds himself to keep said fence around said pasture, and to keep up waterings in good shape on same, and in

case engines are needed to keep plenty of water on hand, first party is to furnish and run said engines.

"First party agrees to put a well in pumping shape that is now not used, located about one and one half miles southeast of Daisy Mills.

"First party agrees to deliver said cattle back to Seagraves at the expiration of this contract, or in equal distance in any other direction, but first party is not responsible for said cattle, but agrees to use the same diligence in taking care of cattle, as far as water and grass is concerned, as if they were his own.

"Party of the first part agrees to remove all stock that is now on said pasture as quick as he can get help to remove same. Party of the second part agrees to pay party of the first part the total consideration of Eighteen Thousand Dollars, to be paid as follows: Six Thousand Dollars cash, the receipt of which is hereby acknowledged, and two notes for $6000.00 each one due the first day of January, 1919, and the other due the first day of May, 1919, but it is agreed if second parties should remove said cattle from said pasture, that it will mature said notes, and they shall become due and payable on demand, said notes to draw 8 per cent interest after maturity.

"This contract made and signed in duplicate either of which may be used as the original.

"Witness our hands this 22nd day of August, 1918."

Hamilton et al. answered in the trial court by general denial, and further pleaded failure of consideration for the notes as follows:

"* * * The defendants say that plaintiff should not recover herein for the reason that the consideration of the notes herein sued on, if the notes mentioned in the plaintiff's said petition are notes executed by the defendants in his favor, has wholly and totally failed in this, to-wit:

"The only notes ever executed and delivered by the defendants to the plaintiff were for the lease of a certain pasture situated in Gaines County, Texas, for grazing purposes, which was represented to the defendants by the plaintiff as containing 61 sections of land, for which the defendants were to pay the plaintiff an aggregate of Eighteen Thousand Dollars, of which sum of Six Thousand Dollars was paid in cash, and six notes, each for Two Thousand Dollars, bearing interest from maturity until paid at the rate of eight per cent, three of which were to mature on January 1st, 1919, and the other three to mature May 1st, 1919;

"That after paying the said Six Thousand Dollars cash, and said first maturing three notes, aggregating Six Thousand Dollars, the defendants discovered that the lands delivered to them by the plaintiff in consideration of such agreed sum of Eighteen Thousand Dollars, was short more than one third, and that there was in truth and in fact less than Forty Sections of such lands, and that they had already paid the plaintiff said sum of Twelve Thousand Dollars, which was more than the prorata part of such sum, for the number of sections actually delivered to them;

"That in addition to the shortage in such number of sections of land, and the amount of grazing thereon, the plaintiff had failed and refused to remove cattle and livestock that were in said pasture, as he had obligated and bound himself to do, but continued to run a great number of livestock therein, amounting at no time to less than 100 head, thereby consuming a large part of the grass thereon, and thereby lessening the value of same;

"That as soon as such shortage of acreage was discovered by the defendants, they repudiated the remaining three unpaid notes, and advised the plaintiff that they would not pay same, for the reason that they had already paid the plaintiff more than he was justly entitled to receive for same.

"Wherefore, the defendants pray that plaintiff take nothing by his suit herein, and that they go hence without day, and recover all costs in this behalf incurred."

After pleading failure of consideration in the language above set out, the defendants in error pleaded fraud, and their petition in this particular is in part as follows: "Further answering herein, the defendants say that the plaintiff ought not to recover herein for the reason that he procured the execution of the notes herein by fraud, and said notes were tainted with fraud from their execution, and should not bind the defendants, for the reason that:"

After the above follows various alleged acts of fraud, and damages resulting therefrom not necessary to be set out here.

The part of the judgment of the trial court applicable to a decision of this appeal is as follows:

"Thereupon came on to be heard the plaintiff's general demurrer to the defendants first amended original answer, and his special exceptions and the court having heard said exceptions, said special exceptions of the plaintiff were overruled, to which the plaintiff duly excepted, the general exception of plaintiff was sustained to all of that part of the defendants said answer, except as to that part of said answer setting up a failure of consideration by reason of the shortage or deficiency in acreage, and that part of the defendants answer was held to be a good plea, to which action of the Court, Plaintiff then and there in open Court excepted.

"Thereupon the Court after hearing the evidence and argument of counsel is of the opinion that the plaintiff is not entitled to recover upon the notes as sued upon and that the defendants, should prevail upon their

plea of failure of consideration, of the notes sued upon, It is therefore ordered decreed and adjudged by the Court that the plaintiff take nothing by his said suit, and that the defendant go hence without day and recover of and from the plaintiff and his bondsmen, all costs in this behalf expended."

An examination of the judgment of the trial court shows that he sustained the general demurrer of the plaintiff to all of the answer of the defendants, "except that part of said answer setting up a failure of consideration by reason of the shortage or. deficiency in acreage, and that part of the defendants' answer was held to be a good plea."

■■ The defendants in error have filed no cross-assignments, and therefore the correctness of the ruling of the court in sustaining the general demurrer in part, that is, to all of the answer except that part of same which sets up failure of consideration by reason of shortage of acreage, etc., is not before us to pass upon. We will say in passing, however, that a general demurrer is an exception to a pleading that no cause of action or matter of defense is shown thereby. Lambeth v. Turner, 1 Tex. 364; Hudson v. Wheeler, 34 Tex. 356; Robinson v. Davenport, 40 Tex. 334; George v. Vaughan, 55 Tex. 129, and Carson v. Cock, 50 Tex. 325. We will further remark that we are not apprised in the record on what theory the trial court sustained the general demurrer as to all of the answer, except that part setting up failure of consideration on account of shortage in acreage.

■ We take the judgment and the recitals therein, hereinabove mentioned, as a direct and concrete statement by the trial court, in the judgment itself, that the one and only reason for a judgment in favor of the defendants was the bare fact that there was a shortage in acreage, and that he did not consider or find as to any other matters of defense involved in the pleading or evidence. No other conclusion can be drawn from the above recital in the judgment.

■■ It is contended by the plaintiffs in error that the contract in question is not one of lease of 59 sections of land, but is a contract to pasture about 2,000 head of cattle. It is contended by the defendants in error that the contract is one of lease of 59 sections of land. We are of the opinion that the contract is a pasturage, and not a lease contract; but we are further of the opinion that in view of the terms, and express purposes of the contract, it is absolutely immaterial whether said contract be one of lease, or of pasturage. If the contract be construed to be a pasturage contract, its purposes are expressly limited to about 2,000 head of cattle. If the contract be construed to be a pasturage lease, it is certainly not an unlimited pasturage lease; but its purposes are expressly stated in the contract as limited to pasturage for about 2,000

head of cattle. In other words, if the contract be construed as either one of pasturage or of lease, its sole and only purpose is limited to the pasturage of about 2,000 head of cattle. Under either construction, the mere fact that there is a shortage in acreage would not constitute a defense to. the notes sued on; but, under either theory, it would be necessary for the defendants to go further and show injury, or damage, on account of such shortage.

Inasmuch as the trial court has expressly based his judgment on the shortage of acreage only, without regard to the question of injury, the judgment is erroneous, and should be reversed.

■ However, if we indulge the presumption in favor of the judgment of the trial court, that it is based on the shortage in acreage, together with the injury, or damages resulting therefrom, a presumption we do not think such judgment justifies, we are still of the opinion that the judgment should be reversed for the reason that there is no evidence in the record that we have been able to find, and none has been pointed out to us, to show the amount of the damages, or to show that the defendants have been injured on damaged by the shortage in acreage to an amount equal to the unpaid portion of said notes.

For the reasons stated, we recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.