## T. R. BUFORD ET AL. V. P. BOSTICK ET AL.

1. CERTIFICATE OF COMMISSIONER OF LAND OFFICE. — The certificate of the commissioner of the general land office, under Paschal's Digest, 3806, is not admissible in evidence to prove the date on which field-notes of a particular survey were returned, or that they had not been withdrawn from the office.

2. NEGLIGENCE OF ATTORNEY—NEW TRIAL. — A new trial may be granted on the ground of surprise, even when such surprise is occasioned by a correct ruling of the court, and although negligence may be imputable to his attorney, if the party asking it has a meritorious cause of action and gross injustice will otherwise be done.

3. NEWLY-DISCOVERED EVIDENCE.—Important testimony of a witness who was examined on the trial, but who had not communicated his knowledge of the facts relied on until after the trial, is ground for new trial.

4. CALLS IN SURVEY—EVIDENCE.—A survey called for as the beginning corner did not so appear on the county map or surveyor's books : *Held*, That evidence that such survey was at the time known as called for, was admissible.

5. SAME.—Field-notes called for " southeast corner of a survey in name of James Russell." No such survey existed, but one in name of Ira Ruble was there instead : *Held*, Admissible to show that the Ruble survey was made for James Russell, and that the survey had been known as the Russell survey.

APPEAL from Delta. Tried below before the Hon. Green J. Clark.

June 1, 1874, T. R. Buford, M. L. Patten, and W. R. Buford brought an action of trespass to try title in the ordinary form against P. Bostick and others, for a tract of three hundred and twenty acres of land located and surveyed in name of Mary Hamilton, with field-notes and survey returned to the general land office.

The defendants pleaded not guilty and limitation of three years.

On the trial, and after plaintiffs had proved title to the certificate and the survey and return of the field-notes to the land office, they offered in evidence a certificate from the

commissioner of the general land office certifying the date said field-notes had been returned to the land office, and that they had not been withdrawn from the office. This testimony was excluded, on objection. On the exclusion of the testimony, plaintiffs asked a continuance on the ground of surprise from the exclusion of said testimony, alleging that the testimony was material; that it could be obtained by depositions by the next term, and that they had relied on the opinion of their counsel that the excluded certificate could be used in evidence. The application for continuance was overruled and the case proceeded.

There was much and conflicting testimony touching the marks on trees insisted on as bearing trees for the northwest corner of the survey claimed by plaintiffs and sought to be identified, some witnesses stating that the marks were recent, altered, &c.

The beginning corner of the Mary Hamilton survey was "the southeast corner of a survey in name of James Russell."

It was shown that the survey cornering as called, was the Ira Ruble survey; that a survey in name of James Russell was several miles distant. There was testimony showing that James Russell had the Ira Ruble survey made, and the survey was called the Russell survey in other adjoining surveys.

The northwest corner of the Mary Hamilton survey called for two bearing trees, one a post-oak marked J. E. and the other marked X. The testimony was conflicting as to these marks found on trees at the places called for. Some witnesses testified that they were recent. Defendants claimed under preëmptions and locations made since 1869.

The instructions given the jury are sufficiently shown in the opinion.

The jury returned a verdict for the defendants.

Motion for new trial was urged on the grounds of surprise in the ruling of the court excluding the certificate of the commissioner of the general land office as to the date of the

return of the field-notes of the Mary Hamilton survey to the land office, and that they had never been withdrawn.

Also, as ground for new trial, was urged newly-discovered testimony of G. W. Helms, whose affidavit in support of the motion was as follows:

"That some time in the year 1857 or 1858 he bought from A. Skidmore part of his survey that adjoined the Mary Hamilton survey, sued for by plaintiffs in this case; that in surveying said land he ran to the northwest corner of the Mary Hamilton survey, and that he then saw the two bearing trees called for in the Mary Hamilton survey, and that one of them was then marked J. E. and the other was marked X, and at that time they had no other mark on them, and those marks were not mutilated, but were plain and distinct; that these facts he had never stated to the plaintiffs or to their attorneys until since he heard of the statements made by the defendants' witnesses about the trees being mutilated and marked up so no such letters could be found on them, and since the verdict of the jury was rendered in the case; that he has all the time told the plaintiffs and their attorneys as little about the evidence in his knowledge as possible, and it has only been upon being pressed by them that he has told anything to them he knew about the matters involved."

The motion for new trial was overruled, and plaintiffs appealed.

*Sam. J. Hunter*, for appellants.

I. The plaintiffs ought to have had a continuance.

It could have worked no injury to the rights of the defendants, and would have enabled the plaintiffs to have procured the evidence necessary to show a good title to the land. We are not yet satisfied that the ruling of the court was correct. We believe that the facts stated in the certificate were such as the officer might certify to. (Paschal's Dig., art. 3806.) We were bound to show that our field-notes had been filed

within twelve months from date of survey. (Paschal's Dig., art. 4556.)

II. We think the exclusion of the certificate of the commissioner of the general land office was error, especially where it was offered for the sole purpose of proving the date of filing; (Paschal's Dig., art. 3806;) for we can find no law requiring the commissioner to indorse on papers filed in his office before the 9th day of January, 1859, the word "filed," and affix the date of filing; and, therefore, as a copy of indorsements would not show the date of filing, it was highly proper for the commissioner to certify to the date of filing.

III. We insist that it was not necessary to prove that Russell was the owner of the Ira Ruble, but only to identify our beginning corner by showing that the survey upon which we begin was called the James Russell about the time our Mary Hamilton was surveyed, and hence the call for it as the James Russell.

We take it that the evidence as to what survey the neighbors called the James Russell was competent to prove our beginning corner; just as if a survey called for a stone, and the stone cannot be found, but we might prove that the stone was once there, or that parties who were dead had said that it was once there, especially if the parties were interested in the land. (7 Monr., (Ky.,) 333; 1 J. J. Marsh., 448; 9 Dana, 465; but see further 28 Tex., 649; 29 Tex., 332, 333, 335; 16 Tex., 92; 3 McC., 229, 259; 30 Tex., 271; Booth v. Upshur, 26 Tex., 70, 71; Bass v. Mitchell, 22 Tex., 294; 16 Tex., 112, 565.)

IV. Besides, we think that the newly-discovered evidence was very material, and was not discovered until after the trial, and would certainly establish one of the corners beyond all cavil. Helms was a neighbor to the defendants; lived on adjoining farms; and it is no wonder that he interfered as little in behalf of our clients, who did not reside in that county, as possible.

We believe that the evidence ruled out by the court, as to

the marks on the bearing trees at our northwest corner, will, together with the fact that the Ira Ruble was, at the time the Mary Hamilton survey was made, known as the James Russell, and called the James Russell, establish beyond all question the identity of our land.

MOORE, CHIEF JUSTICE.—Conceding that the time of filing appellants' certificate and field-notes in the general land office, and that they had not been subsequently withdrawn therefrom, are not facts which may be certified by the commissioner, (Paschal's Dig., art. 3806,) we think there was certainly no such manifestation of "weakness or want of skill" on the part of counsel for appellants in relying on the certificate of the commissioner to establish this point in their case, as should have precluded them from a continuance on the ground of surprise on the ruling of the court excluding the certificate offered by them to prove these facts, or warranting the refusal of a new trial, when it must have been evident that the failure of appellants to prove the return of the certificate and field-notes to the general land office in the time prescribed by law, was, of itself, under the charge given the jury, fatal to their case, however meritorious the cause of action may be, although it cannot be doubted, in view of the certificate of the commissioner, that these essential facts can be easily proved on another trial. That a new trial may be granted on the ground of surprise, even when such surprise is occasioned by a correct ruling of the court, and although negligence may be properly imputable to his attorney, (if the party asking it has a meritorious cause of action and gross injustice will otherwise be done him,) is well settled. (1 Grah. & Watt. on New Trials, 187; 2 Grah. & Watt., 675.)

A new trial should also have been granted to enable appellants to avail themselves of the newly-discovered evidence of the witness G. W. Helms. Although Helms was examined as a witness by appellants, it appears from his as well as Buford's affidavit that he refused, previous to the trial, to inform

appellants as to the facts within his knowledge bearing upon their case, except in regard to matters about which he was directly and particularly interrogated, and then he endeavored to communicate to them as little as possible as to what he knew in regard to the matters in controversy. Certainly his evidence, as given in the application for a new trial, if worthy of belief, is of the utmost importance, and would seem to be of itself sufficient to identify and fix appellants' survey upon the *locus in quo* as claimed by them. In the absence of anything which should have led appellants to suppose that this witness had seen the marked trees called for in their survey previous to the origin of the adverse claim to the land, or prior to the mutilations of the original marks upon the trees, appellants cannot be charged with negligence in not inquiring directly of Helms whether he had seen the trees in question and what he knew in regard to the original marks upon them.

The court correctly instructed the jury that "the identity and locality of land are usually determined by the calls in the grant." That " often one grant calls for another survey, and where this is done the identity and true locality of the survey called for often become a material question, and its locality should be taken into consideration; and it often affords material aid in determining the locality of the land in dispute." But certainly it is much too strict a rule to hold that, where another survey is called for, the identity of the survey thus called for must be shown by its field-notes, of record in the office of the county surveyor, to conform in every particular with the calls in the survey the identity of which is in question. This would be to suppose that surveyors, in writing out their field-notes or reports of surveys, are much more careful and accurate than in the very nature of things could be expected of them, and certainly beyond what every day's experience shows us they are. In looking for the survey called for, we need not, in all instances, expect to find one corresponding in every particular with the calls; or that references to it, generally

made by the surveyor from memory and without an exam-
ination of its record, should be more accurate than the calls
for the natural or artificial objects referred to by him for the
like purpose of identity. It is not essential to show the ex-
istence of a survey in all respects in strict and literal accord
with such a one as called for, but merely that the locality of
the survey in fact called for, though imperfectly or inaccu-
rately designated, shall be identified and pointed out with rea-
sonable certainty; and to enable us to do this we may not
only look to the record of the supposed survey, but also to
the official maps and records of adjacent surveys, as well as
all other pertinent and legitimate evidence conducing to the
desired conclusion.

Appellants' survey calls to begin "at a stake in prairie the
southeast corner of a survey in the name of James Russell,
runs south through a prairie thirteen hundred and forty-
three varas, a stake," &c. Now, conceding that the records
of the county surveyor show no such survey as is here called
for "in the name of James Russell," and that appellants'
survey cannot be otherwise ascertained or identified, must
they therefore lose their land? To say that they must, would
bring in question many titles on which the owners now rest
in security, especially in those sections of the State where
lands are to a great extent located and identified by their calls
for other and connecting surveys. Certainly no one who has
given the least practical attention to our land system, or to the
locating and surveying of land under it, but must know that
while most surveyors perhaps enter surveys in the name of
the grantee of the certificate upon which the survey is made,
yet a contrary practice is by no means infrequent, and often
the field-notes show the survey to be made not for or in the
name of the grantee of the certificate, but in that of the
party claiming and presenting it to the surveyor for location.
Although the survey is in the name of the grantee of the cer-
tificate, when it is called for in another survey it is quite as
often as otherwise called for and designated as the survey of

the party owning the certificate, and for whom the survey was in fact made, or in that of the party owning it, or generally supposed to do so, at the date of the subsequent survey calling for it. Now, shall errors or mistakes in the proper calls for connecting surveys necessarily preclude a recovery in trespass to try title, when the plaintiff's land can only be located and identified by its adjoining and connecting surveys? Unquestionably not. If the recorded surveys fail to identify the survey called for, resort may unquestionably be had to other pertinent testimony which will legitimately tend to do so. As in this case, though no survey in the name of James Russell can be found which will satisfy the calls in appellants' field-notes, it may be shown that the survey in the name of Ira Ruble was in fact made for James Russell; that at the date of appellants' survey this survey was generally called and known by surveyors and those living in its vicinity as the James Russell survey. When these facts are known, all doubt and uncertainty as to the survey upon which appellants' survey is to begin are at once dissipated, and its proper location and identity, if the Ruble or Russell survey is known, can be readily and satisfactorily ascertained.

Other important questions are presented by the record, but as they have not been fully discussed by appellants' counsel, for whom alone an appearance has been made in this court, and as they may not recur on another trial, we refrain from comment upon them.

The judgment is reversed and the cause remanded to the District Court, that another trial of it may be there had.