## SUNSHINE BUS LINES, Inc., v. CRAD-DOCK.

### No. 13630.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 3, 1937.

Rehearing Denied Jan. 14, 1938.

Thompson, Knight, Baker, Harris & Wright, Pinkney Grissom, and Rhodes S. Baker, Jr., all of Dallas, and A. A. Dawson, of Canton, for appellant.

Wynne & Wynne, of Wills Point, for appellee.

DUNKLIN, Chief Justice.

On August 25, 1936, Irl (Jack) Craddock instituted suit in the district court of Van Zandt county against the Sunshine Bus Lines, Inc., a corporation, to recover damages for personal injuries to himself and his wife and damages to his automobile, resulting from a collision between the automobile owned and driven by him at the time of the collision and in which he, with his wife and children, was traveling. On

September 10, 1936, he recovered a judgment by default against the defendant for the sum of $15,400.

This appeal is by the defendant from the order of court denying its application to set aside that judgment and grant a new trial.

Two citations were issued on the day the suit was filed, returnable at the next regular term of court, beginning September 7, 1936. One of the citations was to Van Zandt county, and was served on defendant's agent in that county on the day it was issued, and the other to Kaufman county, and there served on August 26th by leaving a copy of the citation and certified copy of plaintiff's petition at defendant's place of business. And the judgment recites due service of those citations.

In plaintiff's petition, on which the judgment was rendered, it was alleged that on the 28th day of May, 1936, and while he was traveling on the highway in his Plymouth car, with his wife and two children, defendant's bus, which was traveling in the same direction, collided with his car, in its rear, resulting in serious personal injuries to himself and wife and damage to his car. He alleged that those injuries were proximately caused by the negligence of the defendant and its bus driver in the following particulars: The acts of the bus driver in driving the front end of the bus into the rear end of plaintiff's car; in driving the bus at a speed in excess of 45 miles per hour; in failing to sound any warning of the approach of the bus; in failing to stop the bus before it crashed into plaintiff's car; in crashing into plaintiff's car the second time, by reason of which plaintiff's car was upset and overturned. It was alleged that each of said acts of negligence of the bus driver was the proximate cause of the injuries to plaintiff and his wife, which were specified in the pleading, and that plaintiff was not guilty of any negligence contributing to such injuries. Plaintiff claimed damages in the sum of $50,000 for his injuries; $40,000 for injuries to his wife; and $450 for injuries to his automobile.

The findings of fact and conclusions of law filed by the trial judge show that the court sustained each and all the aforesaid allegations of negligence as the proximate cause of the injuries, for which damages were sought and same awarded as follows: $5,000 for injuries to plaintiff; $10,000 for injuries to plaintiff's wife, Mrs. Craddock; and $400 for injury to plaintiff's automobile; all aggregating $15,400.

On September 11, 1936, which was the next day following rendition of the judgment, the defendant filed its original motion to set aside the judgment and grant a new trial, alleging that its failure to file an answer to the suit was due to an accidental misplacement of the citations, and that it had a meritorious defense in that the accident did not result from any fault of the bus driver, but resulted from the act of plaintiff, in first pulling his car to the right off the pavement, and then quickly turning it to the left and against the fender of the passing bus. On September 25, 1936, the defendant filed an amended motion for new trial, elaborating allegations in its original motion, alleging facts to excuse its failure to file an answer before judgment, and also to show a meritorious defense to the suit, and the appeal is from a refusal of that motion. On September 26, 1936, defendant also filed an answer to plaintiff's petition, consisting of a general demurrer, a general denial, and a plea of negligence and contributory negligence of plaintiff.

There is no statement of facts in the record showing evidence offered when the judgment in question was rendered.

At the beginning of the hearing of appellant's motion to set aside the judgment, defendant's counsel in open court tendered "any and all expenses incident to the taking of the default judgment in this case, including payment to witnesses that had to be paid mileage and per diem, and any and all court expenses that were incurred by plaintiff in taking default judgment."

Following is a statement of the evidence introduced by appellant in support of allegations in its motion to set aside the judgment:

Affidavit of Perry Eddy, driver of defendant's bus at the time of the collision embodying statements as follows: The accident occurred at 12:15 o'clock a. m. of May 28, 1936; the bus was a passenger bus and the accident occurred in the Forney Bottoms just west of the town of Forney while he was making a trip from Dallas to Shreveport, La.; it was raining and the roads were slick. Just before the collision happened he was following plaintiff's Plymouth passenger car going in the same direction and was driving at a reasonable speed, possibly not over 35 miles per hour; the bus was not lighted on the inside, but

on the front the lights were burning, and gave a good view of the road ahead; he decided to pass the Plymouth car, and when he sounded his horn the driver of the Plymouth drove it to the extreme right-hand side of the pavement and the front wheels seemed to go off the pavement on to the slick shoulder of the road. The driver then suddenly turned his car very sharply to the left onto the highway and against the right fender of the bus up near its front. Affiant stopped the bus within a short distance, and upon going back found that the Plymouth had turned over on the left-hand side of the highway. Affiant could see no reason for plaintiff to driver his car off the pavement to the shoulder of the road, since there was at least 10 feet of space on the highway for his car when the bus passed him.

Affidavit of A. W. Sessions stated that he witnessed the accident just before it happened; he was driving a truck following the bus; the bus sounded its horn; the Plymouth pulled over to the right and its rear wheels skidded off the pavement which was rounding and slick. When the front wheels of the bus got even with the rear wheels of the Plymouth, the driver of the Plymouth pulled to his left and struck the right fender of the bus which turned the Plymouth over on the left side of the highway.

Affidavit of Dr. L. R. Rhine, practicing in Tyler, who examined both plaintiff and his wife after their report of prior medical treatment in Forney: His examination of plaintiff Jack Craddock revealed "no evidence of injury except soreness over both lumbosacral areas. No evidence of bony injury. He was taped with adhesive and advised to use heat on his back." His examination of plaintiff's wife "revealed a sutured laceration three inches long extending from above the inner canthus of the right eye down below the inner canthus of the left eye. The left cheek is bruised and swollen. The right hand and the right knee is swollen and discolored, but not lacerated or fractured. The laceration is healing nicely and the soreness is rapidly disappearing from the bruised areas. She will have no permanent partial disability."

Testimony of B. L. Morrison, witness on stand: Defendant carried indemnity insurance with the Travelers Insurance Company, located in Dallas. He was employed by that company to supervise claims made against it; that company undertakes to defend lawsuits brought against holders of its policies of indemnity insurance involving accidents of the character involved here. When sued, the company sends the citations to Mr. Bradley, but if he is out of office the citation comes to the witness. The Travelers Insurance Company then furnishes the defense to the suit through Messrs. Thompson, Knight, Baker & Harris, its attorneys in Dallas. The citations with the accompanying copy of plaintiff's petition in this case came to his office in a letter on August 28, 1936, from John H. Awtry & Co., who wrote the insurance on the busses, and was placed on his desk by Miss Collins, an employee in his office. Following the usual custom, witness checked the citations and turned them and the letter back to Miss Collins, with instruction to bring them back to witness on the same day or the day following. On September 10, 1936, witness discovered he had overlooked the citation. Immediately, and about 3:30 o'clock of that day, he carried the citations and copy of the petition to the office of the firm of attorneys named above, and there delivered them to Mr. Ben F. Vaughn, one of the associate members of the firm; Mr. Vaughn called Mr. A. A. Dawson, an attorney at Canton, the county seat of Van Zandt county, and requested him to go over to the courthouse and ascertain if judgment by default had been taken in the case; and through a reply telephone message Mr. Dawson told Mr. Vaughn that a default judgment had been taken about 2 o'clock p. m. the same day. The following day, September 11, 1936, witness went to Wills Point in company with Mr. Hart Willis, a member of the firm of Thompson, Knight, Baker & Harris, and saw Mr. Wynne, one of plaintiff's lawyers, with a view to getting his consent to have the judgment set aside and give the defendant a chance to present its defense on another trial, and offered to try the case at any time and to reimburse them for any and all expenses they had incurred in taking the default judgment, which witness is still willing to do; but the efforts so made were unsuccessful.

He further testified that the Travelers Insurance Company, through its agent, had interviewed witnesses preparatory to defending the suit, and would have been ready for trial at the time judgment was taken.

His testimony, in explanation of his failure sooner to give attention to those citations, was to the same effect as the testimony of Miss Collins, employed in his office.

Miss Collins, witness on the stand, testified she worked in Mr. Morrison's office and handled all incoming mail; opens it, stamps it, and matches it to the file to which it belongs. After the windstorm in July, 1936, there was an unusual increase in the mail of the Travelers Insurance Company, and ever since August the witness had been behind in the matching of the mail; when received, she stamps it "received" and puts it on Mr. Morrison's desk; he opens it and checks the important part of it, returns it to her, and she is supposed to get it back to him the same day. The John H. Awtry letter was marked "Important." It was her duty to then match, it by putting it with other mail pertaining to the same matter, but, in some manner she could not explain, it became mingled with other mail not marked "Important," and for that reason was not taken back to his desk as was the custom, and was not discovered until September 10th, when she and Mr. Morrison found it while looking over the mail not marked "Important."

N. B. McKinney, witness on the stand, was employed by the Travelers Insurance Company to investigate claims presented against it. In June he began investigation of plaintiff's claim for damages growing out of the collision and interviewed several persons, including plaintiff and his wife and the doctor, who treated both of them and could have furnished such evidence on the date judgment was rendered; he exhibited an itemized statement of the damages claimed by plaintiff, which he said was delivered to him by plaintiff showing the aggregate amount claimed in June, 1936, for injuries to himself and wife and two children to be $5,000. Witness did not know of the pendency of the suit until after judgment was rendered.

Mr. J. Hart Willis, one of the attorneys for the insurance company, testified that he left Dallas at 3 o'clock p. m. on September 10th and visited the office of plaintiff's attorneys where he made an unsuccessful effort to get their consent to setting aside the default judgment, and

"I went in and saw Buck Jim and Gordon and talked with them about the case. Mr. Morrison was with me. We explained the situation to them just as has been explained from the witness stand here. I told them that we would be willing to pay any expense—they said they had been to some expense in getting the witnesses. I told them we were willing to try the case at any time, and that we would be willing to pay any expenses that they had been to in getting the default judgment."

On cross-examination by Mr. Gordon Wynne, one of plaintiff's attorneys, the following occurred:

"Q. I told you that if you had made a mistake in your office, there would be some merit in your contention? A. You told me that it was a mistake in the office of The Travelers Insurance Company and that you didn't owe anything to The Travelers Insurance Company.

"Q. Didn't I tell you that it showed to me to be a case of gross neglect on the part of The Travelers; that I hadn't sued them and I didn't know them in the law suit? A. You say didn't you tell me that?

"Q. Yes. A. Yes, you did, but I didn't agree with you."

Mr. A. A. Dawson, an attorney residing in Canton, testified: During the afternoon of September 10th, at the request of Mr. Vaughn, by telephone from Dallas, he discovered that the judgment had been entered and so reported to Mr. Vaughn, and received from Mr. Vaughn on the following day defendant's original motion to set aside the judgment which was by him filed the same day.

In answer to inquiry by defendant's counsel, Mr. Grissom, the trial judge, stated that the case could have been set down at any time after the first week of court; that it was a six weeks' term; the first week nonjury and the following five weeks for jury trials; usually second and third weeks are for trial of criminal cases but, upon request of attorneys, his rule was to set civil cases for Monday of the second and third weeks of court, and criminal cases for Thursday, Friday, and Saturday of those weeks.

It is a uniform rule of the decisions of this state that the trial judge is vested with discretionary power to grant or refuse a motion to set aside a judgment by default, and that his action thereon cannot be disturbed on appeal therefrom unless it appears that there has been an abuse of that discretion. It is a further rule that in order for defendant in a suit to procure the vacation of a default judgment rendered against him and a retrial of the case, after due service of citation, he has the burden of showing that his failure to appear and answer was not due to his negligence; and that he has a meritorious defense to the suit which he can maintain upon another

trial. He will not be denied the relief sought if he can show that his failure to answer or appear at the trial was due solely to some unavoidable casualty, mistake, surprise, or accident. 25 Tex.Jur. pp. 547 to 580, and the many decisions there cited.

Many decisions are cited in appellant's briefs showing reversals of orders refusing to set aside default judgments theretofore rendered during the same term of court; such rulings being based on conclusions reached that under the facts involved the rulings of the trial court were an abuse of discretion vested in them in such matters. We shall refer to a few only, such as the early case of Dowell v. Winters, 20 Tex. 793, 794, and other later cases following the doctrine therein announced; Janes v. Langham, 33 Tex. 604; Sedberry v. Jones, 42 Tex. 10, 11; Buford v. Bostick, 50 Tex. 371; Houston & T. C. Ry. Co. v. Burke, 55 Tex. 323, 330, 40 Am.Rep. 808; Field & Co. v. Fowler, 62 Tex. 65.

In Alexander v. Soloman, 15 S.W. 906, 908, our Supreme Court, in reversing a judgment for failure to grant a new trial on the ground of newly discovered evidence, said: "We think that we hazard nothing in asserting that when the application is made during the term, and the newly-discovered evidence is material and important, and, if admitted, would or might probably change the result in a material respect, and is clearly admissible, and when, upon a review of the whole case, we are not certain that substantial justice has been awarded the appellant upon all the material issues by the judgment of the court below, and when to allow the verdict to stand under such circumstances would very likely deprive the party complaining of a substantial right and work injustice to his cause, we would be authorized to revise the discretion and action of the district court in refusing a new trial, and direct that one be granted, though the diligence of the appellant may not reach the highest, or most exacting standard. 3 Grah. & W. New Trials, p. 1044; Buford v. Bostick, 50 Tex. 371-376; Dowell v. Winters, 20 Tex. [793] 794."

Many other decisions are cited by appellant to a like effect.

Appellee has cited some twenty decisions to support his contention that the evidence offered in support of the motion to vacate the default judgment showed that defendant's failure to answer the suit was due to its negligence, and therefore it cannot be said the trial judge abused his discretion in overruling it. Among the decisions stressed are the following: Landa v. McGehee, Tex.Sup., 19 S.W. 516; Western Union Tel. Co. v. Skinner, Tex.Civ.App., 128 S.W. 715; Southwestern Surety Ins. Co. v. Gulf, T. & W. Ry. Co., Tex.Civ.App., 196 S.W. 276; Colorado River Syndicate Subscribers v. Alexander, Tex.Civ.App., 288 S.W. 586; Homuth v. Williams, Tex. Civ.App., 42 S.W.2d 1048; St. Paul Fire & Marine Ins. Co. v. Earnest, Tex.Civ.App., 293 S.W. 677; San Antonio Paper Co. v. Morgan, Tex.Civ.App., 53 S.W.2d 651; Dempsey v. Gibson, Tex.Civ.App., 105 S.W. 2d 423, 430.

■ The facts involved in the different cases necessarily differ, and each case must be decided on its own facts, and in accord with the established underlying governing principles.

■ The motion for new trial filed within the period expressly allowed by the statutes was an appeal to the equity jurisdiction of the court. The two issues presented in the motion, first, that defendant had a meritorious defense which could be established on another trial; and, second, that failure of defendant to file an answer before judgment was not due to its inexcusable negligence, involved mixed questions of law and fact determinable in accord with the principles of equity.

■ Frequent announcements in the decisions to the effect that the determination of such issues is "within the discretion of the court" means no more than that the court is vested with jurisdiction to determine them in accordance with the principles of equity applicable thereto. The designation of such power as a discretionary power may tend to confusion. As shown in 18 C.J. pp. 1134 to 1137, and numerous cases there cited, "judicial discretion" has a twofold meaning; one pertaining to procedure only not affecting the ultimate rights of litigants and from which no appeal will lie; and the other involving rights of litigants both legal and equitable, determinable according to the applicable principles of law and equity, and not according to the arbitrary will of the court without authority of law.

■ We have reached the conclusion that the order of the district court overruling appellant's motion to vacate the default judgment and grant a new trial of the case was an abuse of judicial discretion and er-

roneous. The undisputed proof showed that before date of the judgment defendant had diligently investigated the facts and at the time the case was called and judgment rendered it was prepared to present a meritorious defense. And, further, that its failure to file an answer before judgment taken was due to accidental circumstances sufficient to refute the charge of inexcusable negligence. The powers vested in the trial court in such matters do not include authority to overrule such a meritorious equitable showing for relief.

For the error noted, the judgment of the trial court, from which the appeal is prosecuted, is reversed, and the cause is remanded, with instructions to the trial court to vacate the default judgment and set down the case for trial in regular order.