**TRADERS & GENERAL INSURANCE COMPANY, Appellant,**

v.

**Chester BURTON, Appellee.**

**No. 15577.**

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 15, 1954.

Rehearing Denied Nov. 5, 1954.

Strasburger, Price, Kelton, Miller & Martin, and W. M. Taylor, Jr., Dallas, for appellant.

Peery, Wilson & Spell, Mock & Kee, and C. Coit Mock, Wichita Falls, for appellee.

MASSEY, Chief Justice.

This is an appeal from a decree of the District Court of Wichita County denying an Insurance Company relief prayed for through a bill in equity, in the nature of a bill of review seeking to set aside a final judgment previously entered in a Workmen's Compensation case. Chester Burton was plaintiff in the Workmen's Compensation case, and Traders & General Insurance Company was the defendant in that case. After Burton's suit had been filed and citation was served, no answer was filed in behalf of the Insurance Company. Three days after answer date, Burton presented his pleadings and evidence to the court and the court on that day entered judgment for him against the Insurance Company for total permanent disability in a lump sum. This judgment became final. Subsequently, the Insurance Company sought by a separate action to set aside the judgment for compensation previously entered and to enjoin the levy of an execution for the compensation. This action was filed thirty days after the default judgment became final. Upon the trial, at the conclusion of the evidence introduced by the plaintiff Company, defendant Burton moved for an instructed verdict in his behalf, and the motion was granted and the jury instructed, and judgment was entered for the defendant Burton. In other words, the Insurance Company's attack upon the judgment which had been entered against it for compensation failed.

Judgment affirmed.

The rule with reference to bills of review is succinctly stated in the noted case of Alexander v. Hagedorn, 1950, 148 Tex. 565, 226 S.W.2d 996, 998, as follows: "Although the bill of review is an equitable proceeding, before a litigant can successfully invoke it to set aside a final judgment he must allege and prove: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own. * * *" Attention of students of the question is directed to the seeming exception on instances where default judgments have been set aside where through some mistake or fault of a clerk of a court a defendant is honestly misled and caused to withhold a defense and the mistake or fault of the clerk is in a respect involving the clerk's official duty to act. This is exhaustively discussed in the Alexander v. Hagedorn opinion.

The case of Alexander v. Hagedorn, supra, quotes with approval previous holdings to the effect that grounds on which bills of review must find their support warranting interference with final judgments are narrow and restricted and not to be relaxed merely because it may appear in some particular case that an injustice has been done.

168

The rule is different in instances where a trial court still has jurisdiction, as where during term-time a defendant files and presents a motion to vacate a default judgment entered during the term in favor of one party litigant upon the failure on the part of the other to timely file an answer to a complaint. In the words of Chief Justice Hickman, when a member of the Commission of Appeals: " * * * A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. * * *" Craddock v. Sunshine Bus Lines, 1939, 134 Tex. 388, 133 S.W.2d 124, 126. By reference to the Court of Civil Appeals decision in the same case, affirmed by the Supreme Court, it is noted that the trial judge has certain discretion for the exercise in such instances and which will not be disturbed except when he acts arbitrarily. Sunshine Bus Lines v. Craddock, 1937, Tex.Civ.App., Fort Worth, 112 S.W.2d 248, 252. The rule in such cases is distinguished from that here applicable in Woods v. Gamboa, 1950, Tex.Civ.App., Dallas, 229 S.W.2d 1021, writ refused, n.r.e.

So, to the misfortune of appellant Traders & General Insurance Company, its case must be tested by the rules recited in the Alexander v. Hagedorn case, supra. We believe that there is no question but what this appellant did have a meritorious defense to appellee's compensation suit upon which judgment was obtained by default. Therefore, we must examine the record in the first instance to determine whether the Company was prevented by some wrongful act or fraud or accident committed or accidently done or permitted by Burton and his attorneys; and if so, we will in the second instance determine whether the Insurance Company was wholly free from any fault or negligence in respect thereto.

The Insurance Company's predicament was in part due to the discharge of its claim agent for the Wichita Falls, Texas territory. While in the field this claim agent was handed the citation which had been served upon the Company's agent for service. It appears that on December 1, 1953, the claim agent was notified by the Company's home office officials to come into Dallas and bring his files, etc., for delivery to the Company, as he was being discharged. On said date the citation was in this claim agent's brief case containing claim files. These claim files were "field files" as they may be differentiated from the files kept on the same claims in the home office, and which are denominated "master files". In the normal course of business the discharged claim agent would have delivered the citation to the home office where it would become a part of the "master file" on Burton's claim for compensation. The "master file" on Burton's claim for compensation contained or should have contained (according to the Company's operational plan) everything in the "field file" of the Wichita Falls claim man. Of course, the claim man would assemble statements taken in the course of his claim investigation, medical reports, etc., in his "field file" and there would be a period of time when the "master file" would not contain the material assembled, but these statements, reports, etc., would ultimately find their way into the home office where they would become part of the "master file", with copies only in the "field file" where that was necessary. In a similar manner, in the present instance, the citation in the compensation case was in the claim agent's file in the brief case. He had been handed the citation by the Company's agent for service some week or ten days earlier, and had not yet forwarded it to the home office for inclusion in the "master file". Perhaps he would have done so had he not been discharged. That is a matter for speculation. However, he did not call the attention of the officials in the

home office to the citation in the brief case delivered over to them at the time of his discharge. The contents of the brief case were not checked and the citation was not discovered therein until after a default judgment had been taken in the compensation suit, and after that judgment had become final.

■ The parties devote considerable space in the briefs to these circumstances, and the Company's contentions are that the failure to file its answer to the citation was primarily the result of the events connected with the discharge of the claim man. However, we deem this situation of little consequence in the solution of our problem, for we are compelled to view the Company as a party to a lawsuit having full knowledge of the fact of its having been filed and of the fact that citation was served upon it from the date the Company's agent for service was handed the citation by the Constable in Wichita Falls. This was the effect of the delivery of the citation to the Company's agent for service, whose authority is stipulated by the parties on this appeal. See text and cases cited at 2 Tex.Jur., p. 563, sec. 158; 1 Tex.Jur. Ten Year Supp., Agency, p. 266; 33 Tex. Jur., p. 841, sec. 36; and 8 Tex.Jur. Ten Year Supp., Process and Notices, p. 344.

A certain chronological order of events may be well noted. The award of the Industrial Accident Board of Texas was entered on November 16, 1953, both the Company and Burton being informed. Burton's notice to the Board that he was unwilling to abide by the award, his Notice of Appeal, was filed with the Industrial Accident Board on November 19, 1953, and on the following day the Board notified the Company of the fact that such notice had been given by Burton. Suit to set aside the award of the Industrial Accident Board and for compensation was filed in the Wichita County District Court on November 19, 1953. Citation was served upon the Company's agent for service on November 20, 1953. The day provided for by law for the Company's answer to be filed to Burton's suit was December 14, 1953. The default judgment was taken by Burton on December 17, 1953. The judgment became final on January 17, 1954. Two days later Burton's attorneys notified the Company.

■ It may be noted that a Mr. Charles Kilgore, the manager of the Company's subrogation department, was in Wichita Falls and in the offices of Burton's attorneys on date of January 9, 1954. The record discloses that in the discussion of the compensation case, which Mr. Kilgore obviously thought was pending at the time, Burton's attorneys did not disabuse him of his erroneous state of mind. The discussion was carefully channeled into a discussion of what kind of arrangement, if any, could be made between Burton and the Company to facilitate Burton's tort claim against the railroad company whose negligence Burton claims was the cause of his injury, but against which suit was being delayed. Since the Company knew that Burton's Notice of Appeal was filed with the Industrial Accident Board on November 19, 1953, we must presume that Mr. Kilgore at least knew that Burton's compensation suit should have been filed by December 9, 1953, (within twenty days after giving notice of appeal) for otherwise the award of the Industrial Accident Board would have not been appealable. Of course, Mr. Kilgore was not in the particular department of the Company which would have attended to answering any citation served upon it, and he assumed that another department of his Company was attending to the matter of an answer if it was not already attended. Burton's attorneys did not tell him of the true state of affairs, but neither did they mislead him or misinform him in a legal sense by permitting him to remain in error. Loomis v. Balch, 1944, Tex.Civ.App., Galveston, 181 S.W.2d 849.

The Company filed suit in the nature of the bill of review on February 16, 1954, coupling it with a suit for injunction against levy of execution against it.

In view of the circumstances, noted above, the Company has primarily predi-

cated its case upon an interchange of letters which passed between the Company and Burton's attorneys. The first of these letters was sent to the Company and the second sent by them. The first of these letters reads as follows:

"November 19, 1953
"Traders & General Ins. Co.
"115 Field Street
"Dallas, Texas
"Attention: Mr. Dan P. Johnston.
"Dear Johnston:

"We now have pending before the Board and are ready to file suit on the claim of Chester Burton vs. Traders & General Insurance Company, which grew out of an accidental injury on the 4th day of April, 1953, while the Plaintiff was an employee of Virgil T. Stone.

"Mr. C. B. Kilgore has prepared a stipulation with reference to subrogation rights which is not acceptable to us, but I think we could work this matter out in a satisfactory way so that the Traders & General would not be out but very little money in view of the fact that we have what we think is a very good case against the Fort Worth & Denver Railroad.

"Of course, we cannot jeopardize Burton's rights by proceeding against the railroad prior to trying the compensation case as we feel like we have a reasonable expectation of securing total and permanent on this compensation case.

"On the other hand, if we proceed under the compensation case and you have your very fine doctors testify that this man is twice as strong as he was before he got injured, then your subrogation rights against the railroad will be jeopardized to a great extent.

"I propose that you authorize us to hold this compensation case in abeyance and proceed against the Fort Worth & Denver on a basis of 40% attorney's fee, and that any monies that we collect by suit or settlement over and above the attorney's fee be credited on any judgment or settlement that we can hereafter make or secure with the Traders & General Insurance Company.

"If this is satisfactory with you will you please draw a stipulation in accordance with this authorizing us to proceed against the Fort Worth & Denver without waiving any of our rights against the Traders & General.

"If this is not satisfactory will you please advise the writer so that we can go ahead and secure service of process on the compensation case and proceed to trial thereon.

"With personal regards, I remain,
"Yours truly,
"Peery, Wilson & Spell
ss/ "By Kearby Peery
Kearby Peery"
"KP:ga

In reply to the quoted letter, Mr. Kilgore wrote the attorneys on November 24, 1953, that his Company rejected their proposals. He urged that the attorneys consider proceeding with a tort action against the third party railroad company, holding the compensation case in abeyance with full rights of its prosecution preserved under a form or written agreement the Company customarily used, a copy of which was in the possession of the attorneys. He also asked for a reply to his letter. It was to further urge compliance with the same suggestions that Mr. Kilgore visited in the attorneys' offices on January 9, 1954, particularly since the attorneys never replied to his letter. The default judgment had already been taken, and in our opinion the important period ended as of the date of the judgment, for the Company's defense should have been made on or prior to that time if at all. Subsequent periods of time would not be those within which the Company could make a defense to Burton's suit, but would merely be periods during which the Company might seek relief from the judgment, to show why it should be set aside so that on another trial the Company would be enabled to make a defense, etc. But any distinction is not important here for the events subsequent to the date the judgment was taken weaken rather than strengthen the Company's case, since it was bound to have known that Burton's

suit should be on file by December 9, 1953, if the award of the Industrial Accident Board (which did allow him some compensation) had not become final. The Company was bound to have known that if Burton had not perfected his appeal from the award, it was in a position of hazard should it not promptly pay the compensation ordered in the award, for otherwise Burton would be entitled to file a suit to mature the award and obtain not only a judgment in its amount but also a judgment for penalties under provisions of the Workmen's Compensation Act, Art. 8307, § 5a, R.C.S.

 There was no fraud on the part of Burton which prevented the Company from making its defense; there was no wrongful act on the part of Burton which prevented the Company from making its defense; and there was no accidental act done or omission to act when there was a duty to act permitted by Burton which prevented appellant from making its defense. When speaking of Burton, we include his attorneys. Instead, the Company's actual ignorance of the true state of affairs caused it to withhold the advancement of a defense if it did not affirmatively prevent such defense. But from a legal standpoint the Company could not have been in ignorance. When its lawful agent for the purpose was served with citation, it was legally "on notice" from that time forward in all material respects. That is the very purpose of having a system for the serving of citations. And should a plaintiff in a discussion with the defendant upon whom he has caused citation to be served in the suit he has filed discover that the defendant has overlooked or forgotten about the fact that he is exposed to a default judgment, there is no duty cast upon the plaintiff to point out the true state of affairs to him. The parties are dealing "at arms length" and there is no fiduciary relationship of any character or degree. Such a plaintiff will not have his default judgment taken away from him in the equitable proceeding of bill of review unless he *prevents* the defendant from making his defense, and conduct on his part which

merely permits a defendant to fail to defend is not sufficient. Stevenson v. Thomas, 1932 (Tex.Civ.App., Texarkana), 56 S.W. 2d 1095, error dismissed; Loomis v. Balch, supra.

In view of this conclusion, there is no necessity to discuss any question as to whether a fact issue was raised by the evidence upon the matter of the Company's negligence. The evidence not having raised an issue of fact on wrongful act or fraud or accident on the part of Burton and his attorneys preventing the Company's defense, an instructed verdict was proper.

Judgment is affirmed.